UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | SANDRA BECCERA | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| David Parisi | Dennis Ellis | |
| Nabil Nachawati | Nicholas Begakis | |

**Proceedings:** **DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)** (filed 05/02/11)

**DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS PURSUANT TO RULE 12(f)** (filed 05/02/11)

## I. INTRODUCTION

On April 1, 2011, plaintiffs Jill Guido and Natalie Lefebvre, on behalf of themselves and all others similarly situated, filed a first amended complaint ("FAC") against defendants L'Oreal USA, Inc. and L'Oreal USA Products, Inc. (collectively, "L'Oreal"). The gravamen of the FAC is that L'Oreal misrepresented and failed to properly warn consumers that a hair care product manufactured by L'Oreal – Garnier Anti-Frizz Sleek and Shine Anti-Frizz Serum – is dangerously flammable when used with heated hairstyling appliances. Plaintiffs' FAC alleges claims for: (1) violation of the Implied Warranty of Merchantability, Uniform Commercial Code Section 2-314, (2) violation of the Implied Warranty of Fitness for a Particular Purpose, Uniform Commercial Code Section 2-315; (3) violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq.; (4) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; (5) violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 et seq.; and (6) violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.

On May 2, 2011, L'Oreal filed the instant motions to dismiss pursuant to Rule 12(b)(6) and to strike pursuant to Rule 12(f). Plaintiffs filed oppositions to the motions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

on June 1, 2011. L'Oreal replied on June 13, 2011. After carefully considering the arguments set forth by both parties, the Court finds and concludes as follows.

**II.    BACKGROUND**

Garnier Anti-Frizz Sleek and Shine Anti-Frizz Serum (the "Serum") is a hair styling product manufactured, distributed and marketed by L'Oreal to consumers and sold throughout the State of California and the United States in drug stores, retail outlets, supermarkets, and on the internet. FAC ¶¶ 12–13. L'Oreal markets the Serum as a "leave-in" hairstyling product for use against "frizzy, dry and unmanageable" hair. FAC ¶¶ 12, 22. Plaintiffs allege that L'Oreal is aware that consumers use the Serum just before styling their hair using heated styling appliances, including a blow-dryer, curling iron, straightening iron, or straightening comb. FAC ¶¶ 14, 21. L'Oreal markets the Serum on the Garnier website and on the product packaging, directing consumers to use "as much as needed for your hair type," "do not rinse," and "[f]or the sleekest look, style using brush and blowdryer." FAC ¶ 22.

The Serum's main ingredients are cyclopentasiloxane and dimethiconol. FAC ¶ 15. Plaintiffs allege that these materials each have a flashpoint[1] of 171 degrees Fahrenheit. FAC ¶ 16. Plaintiffs allege that the normal heating range for common heated hair styling appliances is considerably greater than 200 degrees Fahrenheit. FAC ¶ 17. Thus, according to plaintiffs, the Serum is flammable when used in conjunction with ordinary heated hair styling products, and poses an extreme and unreasonable danger to consumers who use heated styling appliances after applying the Serum to their hair. FAC ¶¶ 18–19.

Plaintiffs allege that L'Oreal knew or should have known that (1) the Serum's ingredients are highly flammable, (2) styling appliances typically generate heat in excess of 200 degrees Fahrenheit, and (3) its customers would likely use the Serum in combination with a heated hair styling appliance. FAC ¶¶ 23–25. In fact, plaintiffs allege that L'Oreal had actual notice of the unsafe nature of the Serum. FAC ¶¶ 26–27. Plaintiffs allege that a teenager who suffered serious burns to her head and scalp when the

---

[1] A material's flashpoint is the temperature that the vapor of the material will ignite. FAC ¶ 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

Serum caught fire while using a heated hair styling appliance filed a personal injury lawsuit against plaintiffs.[2]  FAC ¶ 26.

  Plaintiffs allege that despite this knowledge, L'Oreal failed to warn consumers that the Serum is defective and/or poses a substantial and unreasonable risk of burns.  FAC ¶ 27.  According to plaintiffs, L'Oreal attempts to "lull consumers into a feeling of safety" by representing on its website:

> Garnier uses methodologies recognized by the international scientific community as part of its product and claim development process which evaluates the safety and effectiveness of ingredients, finished products, and marketing claims. . . .  The Garnier products benefit from scientific and customer research gathered at 13 research centres and 13 evaluation centres around the world. . . .  We also conduct independent clinical studies to assess the effectiveness and safety of our products. . . .

FAC ¶ 28.  Plaintiffs allege that these statements constitute express representations that they relied upon.  FAC ¶ 29.  Plaintiffs allege that they would not have purchased the Serum if L'Oreal had disclosed that it was highly flammable and unsuitable for use in conjunction with heated styling appliances.  FAC ¶ 30.  Plaintiffs further allege that L'Oreal had a duty to warn plaintiffs that the Serum is dangerous, and the failure of L'Oreal to include such information is a material omission.  FAC ¶ 30.

  Plaintiffs allege that other manufacturers of comparable anti-frizz products containing the same ingredients as the Serum have adequate warning labels regarding those products' flammability.  FAC ¶ 33.  Thus, plaintiffs allege that because L'Oreal failed to warn purchasers about the dangers of the Serum, it was able to charge higher prices for its product in comparison to products which contained warning labels.  FAC ¶ 34.  Accordingly, plaintiffs allege that they were "misled into paying this higher price because they believed [L'Oreal's] product was safe to use with styling appliances."  FAC ¶ 35.  Plaintiffs claim that the Serum is not useful to them, and they seek to recover the difference between the price they paid for the Serum and the price that a properly labeled

---

[2] Plaintiffs do not allege the case name or any other details regarding the status or disposition of the case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

product would command in the marketplace. FAC ¶¶ 36–37. Plaintiffs also seek injunctive relief, including a recall of the Serum with accompanying refunds of the purchase price and a re-labeling of the product with adequate warnings. FAC ¶ 38.

In addition, plaintiffs would like to certify their claims as a nationwide and statewide class action. See FAC ¶¶ 40–44. Specifically, plaintiffs seek to represent "[a]ll individuals who purchased [the Serum] in the United States during the period of February 2, 2007 through the present." FAC ¶ 40. Plaintiffs also seek to represent a California class, including, "[a]ll California residents who purchased [the Serum] since February 2, 2008." Plaintiffs specifically exclude from the classes "any persons who have sustained physical injury as a result of the defects at issue in this litigation." FAC ¶ 40.

### III. LEGAL STANDARDS

#### A. Motion to Dismiss Pursuant to Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. Stated differently, only a complaint that states a claim for relief that is "plausible on its face" survives a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to the 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

allegations.  Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pac. Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

### B.  Motion to Strike Pursuant to Rule 12(f)

A motion to strike material from a pleading is made pursuant to Fed. R. Civ. P. 12(f). Under Fed. R. Civ. P. 12(f), the Court may strike from a pleading any "insufficient defense" or any material that is "redundant, immaterial, impertinent or scandalous." A Fed. R. Civ. P. 12(f) motion is not a motion to dismiss for failure to state a claim upon which relief may be granted, and, where not involving a purportedly insufficient defense, simply tests whether a pleading contains inappropriate material. The Court may also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

strike under Fed. R. Civ. P. 12(f) a prayer for relief which is not available as a matter of law. Tapley v. Lockwood Green Eng'rs, 502 F.2d 559, 560 (8th Cir. 1974). The essential function of a Fed. R. Civ. P. 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994). Because of "the limited importance of pleadings in federal practice," motions to strike pursuant to Fed. R. Civ. P. 12(f) are disfavored. Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).

### IV. DISCUSSION

#### A. Motion to Dismiss Pursuant to Rule 12(b)(6)

##### 1. Article III Standing

As a threshold matter, L'Oreal argues that all of plaintiffs' claims are barred because they have not suffered any injury and therefore lack Article III standing. Mot. to Dismiss at 6–8. In order to establish standing to assert a claim, a plaintiff must: (1) demonstrate an injury in fact, which is concrete, distinct and palpable, and actual or imminent; (2) establish a causal connection between the injury and the conduct complained of; and (3) show a substantial likelihood that the requested relief will remedy the alleged injury in fact. See McConnell v. Fed'l Election Comm'n, 540 U.S. 93, 225-26 (2003).

The question of whether plaintiffs have Article III standing hinges on whether they have sufficiently alleged that they have suffered an economic loss.[3] See FAC ¶¶ 35–37.

---

[3] L'Oreal also argues that plaintiffs have not suffered an injury in fact because they only attempt to bootstrap their injuries to the actual physical injuries suffered by the plaintiff in the separate action. Mot. to Dismiss at 6–7. The Court disagrees. The reference in the FAC to the plaintiff in the separate action who suffered serious head and scalp burns is not intended to serve as a basis for a demonstrable injury in fact suffered by plaintiffs in this case. Instead, the reference is intended to establish that L'Oreal had actual knowledge of the danger posed by the Serum, and is unrelated to plaintiffs assertion of an economic injury. See FAC ¶ 26 ("Thus, [L'Oreal has] actual notice of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

In Kwikset Corp. v. Super. Ct., 51 Cal. 4th 310, 320–25 (2011), the California Supreme Court addressed the interconnected relationship between the requirements of Article III standing and the standing requirements in California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL"). Noting that "lost money or property—economic injury—is itself a classic form of injury in fact," the court held that there are "innumerable ways" in which a plaintiff can establish economic injury. Id. at 323. The court further explained that because economic injury is a form of injury in fact, "proof of lost money or property will largely overlap with proof of injury in fact." Id. at 325. Thus, where "a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven injury in fact." Id. Applying these principles to the facts in Kwikset, the court found that plaintiffs had standing based on their allegations that "(1) Kwikset labeled certain locksets with 'Made in U.S.A.' or a similar designation, (2) these representations were false, (3) plaintiffs saw and relied on the labels for their truth in purchasing Kwikset's locksets, and (4) plaintiffs would not have bought the locksets otherwise." Id. at 327–28.

The Court reads plaintiffs' FAC as alleging economic loss under two distinct theories: (1) that they paid a higher price for the Serum than they otherwise would have had L'Oreal not made material omissions and misrepresentations regarding the safety of the Serum, see FAC ¶¶ 34–35; and (2) because the Serum is dangerous to use it is not as valuable or useful to them as the price for which they paid for it, see FAC ¶ 36. The Court finds that plaintiffs have sufficiently alleged that they suffered an economic loss under their first theory, but not the second.

### i.   Economic Loss Ensuing From Material Omissions and Misrepresentations

The gravamen of plaintiffs' allegations under this theory is that as a consequence of L'Oreal's misrepresentations and omissions regarding the dangerous nature of the Serum, L'Oreal is able to charge higher prices for the product in comparison with properly labeled products, and plaintiffs were misled into paying this higher price. These

---

unsafe and defective nature of the product and [has] had an opportunity to cure the defect.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

facts boil down to an allegation that plaintiffs overpaid when they purchased the Serum. The court in Kwikset and other courts have found similar overpayment allegations sufficient to demonstrate an injury in fact. See Kwikset, 51 Cal. 4th at 317 (plaintiffs had standing where they alleged that they "were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise. . . ."); In re Toyota Motor Corp., --- F. Supp. 2d ----, 2011 WL 184055, at *7 (C.D. Cal. May 13, 2011) ("Toyota II") (holding that plaintiffs' allegations that they overpaid for their vehicles in light of defects in those vehicles which led to incidents of sudden unintended acceleration, were allegations of economic-loss injury sufficient to confer Article III standing); Henderson v. Gruma Corp., No. CV 10–04173 AHM (AJWx), 2011 WL 1362188, at *4–5 (C.D. Cal. Apr. 11, 2011) (plaintiffs met injury in fact requirement where they alleged that "they paid more for Mission Guacamole and Mission Bean Dip, and would have paid less for the products, if they had not been misled by the allegedly false and misleading labeling.").

   The Court disagrees with L'Oreal that at the pleading stage the FAC must include more specific allegations, including facts specifying comparable products and their prices, to support plaintiffs' overpayment theory. See Mot. to Dismiss at 7; Reply to Mot. to Dismiss at 3. See Toyota II, 2011 WL 184055, at *9 ("general factual allegations of injury ( i.e., the overpayment) suffice at the pleadings stage because courts must 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'") (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

   L'Oreal further argues that plaintiffs have not established a causal connection between their economic harm and the Serum because, unlike the plaintiffs in Kwikset, here "no such alleged defect ever manifested during [plaintiffs] use of the product." See Mot. to Dismiss at 7–8; see also Reply to Mot. to Dismiss at 3–4. L'Oreal further asserts that Toyota II is distinguishable because the product at issue in that case (an automobile) was of such a nature that the plaintiffs in that cases would invariably be required to continue to use them, and the ongoing defect raised a safety issue that diminished the plaintiffs' use and enjoyment of the product. Reply to Mot. to Dismiss at 5.

   To the extent that plaintiffs' injury is premised on the allegation that they paid more for the Serum than they otherwise would have, their economic loss was caused by L'Oreal's omissions and/or representations concerning the products – not from their diminished use or enjoyment of the Serum. Judge Selna's recent decision in Toyota II

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

illustrates this point. There, the court considered and rejected Toyota's argument that "[m]erely alleging that a car is an overpriced 'lemon' is insufficient when there are no allegations of a 'malfunction' (as opposed to allegations of a 'defect')." Toyota II, 2011 WL 1840555, at *10. Judge Selna held that:

> While factual allegations tying an economic loss to a "market effect" are sufficient to establish an injury for standing purposes, they are not indispensable—even for those Plaintiffs who have not experienced the safety defect. As long as Plaintiffs do not simply allege that their Toyota vehicles are "defective," but rather offer detailed, non-conclusory factual allegations of the product defect, the economic loss injury flows from the plausibly alleged defect at the pleadings stage.

Id.

Finally, the authorities cited by L'Oreal in support of its argument that plaintiffs have not suffered an injury in fact are distinguishable. See Mot. to Dismiss at 8; Reply to Mot. to Dismiss at 5–6. L'Oreal cites Birdsong v. Apple, Inc., 590 F.3d 955, 961 (9th Cir. 2009), where the Ninth Circuit held that purchasers of iPods failed to establish an injury in fact because they did not allege that they or anyone else suffered or imminently would suffer hearing loss from the use of the players. The court concluded that plaintiffs' alleged economic harm did not constitute an injury in fact because they "failed to allege a cognizable defect under any of their asserted claims." Id. The court explained that plaintiffs did not establish they were deprived of the benefit of the bargain because they failed to allege that "Apple made any representations that iPod users could safely listen to music at high volumes for extended periods of time. In fact, the plaintiffs admit that Apple provided a warning against listening to music at loud volumes." Id. In this case, by contrast, plaintiffs allege that L'Oreal impliedly represents on the Serum's packaging that the product is safe to use with a "blowdryer," see FAC ¶ 22, and that L'Oreal provided no warning of any kind regarding the flammability of the product, see FAC ¶ 23.

L'Oreal also relies on Webb v. Carter's Inc., 272 F.R.D. 489, 494 (C.D. Cal. 2011), to support its argument that plaintiffs have not suffered an injury in fact. See Reply to Mot. to Dismiss at 5–6. In Webb, however, the court was presented with the question of whether members of the proposed class had standing at the class certification

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

stage. 272 F.R.D. at 497–99. The court concluded that *some* members of the proposed class who had purchased infant clothing that allegedly contained toxic chemicals, but had "been able to use the clothes without incident," had not suffered an economic loss. Id. at 499. The decision in Webb is premised on the court's decision to require absent class members, not just the named plaintiffs, to satisfy Article III's standing requirements. Id. at 497 ("Although there is no controlling authority requiring absent class members, as opposed to the named plaintiffs, to satisfy Article III's standing requirements, the Court is persuaded by authority indicating that they must.").[4] Thus, the decision in Webb is of little relevance in determining whether the named plaintiffs in this case have alleged that they suffered an injury in fact at the pleading stage. The Court finds that L'Oreal's arguments regarding the claims of putative class members who purchased the Serum and used the product without incident are better addressed at the class certification stage. At that point, the Court will inquire into whether the class representatives' claims are typical of those of the class and whether there are questions of law or fact common to the class. See Fed. R. Civ. P. 23(a).

Accordingly, the Court concludes that plaintiffs' allegation that they overpaid when they purchased the Serum is sufficient to establish that plaintiffs have suffered an injury in fact.

### ii. Loss in Value and Loss of Usefulness

Plaintiffs' allege that because the Serum is dangerous to use it is "not useful to them and it is not as valuable to them as the price for which they paid for it." FAC ¶ 36. The Court interprets this statement as alleging a loss in value and a loss of usefulness. There do not appear to be any allegations in the complaint that support plaintiffs' allegation that the Serum has lost value or is not as useful to them as it was when they

---

[4] The Court further notes that the decision in Webb is not binding precedent, and other courts have held that only the named plaintiffs must satisfy Article III standing requirements. See, e.g., Me. State Retirement Sys. v. Countrywide Fin. Corp., 722 F. Supp. 2d 1157, 1163 (C.D. Cal. 2010) ("In a class action, the lead plaintiffs must show that they personally have been injured, 'not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" ) (quoting Warth v. Seldin, 422 U.S. 490, 502 (1975)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

purchased the product. For example, plaintiffs do not allege that they stopped using the Serum when they learned it was flammable, or ceased applying the product before using heated hair styling appliances. See, e.g., Keilholtz v. Lennox Hearth Prods., Inc., 268 F.R.D. 330, 335–36 (N.D. Cal. 2010) (plaintiffs suffered injury in fact where they alleged that they ceased using their single-paned sealed glass-front gas-burning fireplaces when they discovered that it could cause third-degree burns, and that they would not have purchased the fireplace had they known of the danger it posed). Plaintiffs do allege that the Serum has less value on the secondary market, however, they do not link this reduced value to the alleged product defect. See FAC ¶ 36 ("The product also has less value on a secondary market (due to transaction costs and the reduced price a consumer would pay for a product purchased from an individual rather than retail establishment."). Accordingly, the Court finds that the allegations supporting plaintiffs' loss in value and loss of usefulness theory do not go far enough to establish an injury in fact.

In sum, the Court concludes that plaintiffs sufficiently allege that they suffered an economic loss by overpaying when they purchased the Serum. Accordingly, the Court finds that plaintiffs have alleged that they suffered an injury in fact, and therefore have Article III standing.

### 2. Pleading With Particularity Under Rule 9(b)

L'Oreal argues that the allegations in the FAC are insufficient to satisfy the heightened pleading burden required by Rule 9(b) of the Federal Rules of Civil Procedure. Mot. to Dismiss at 8–10.

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity. Federal Rule of Civil Procedure 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud." Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1103-04 (9th Cir. 2003). A claim is said to be "grounded in fraud" or "'sounds in fraud'" where a plaintiff alleges that defendant engaged in fraudulent conduct and relies on solely on that conduct to prove a claim. Id. "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Fed. R. Civ. P.] 9(b)." Id. However, where a plaintiff alleges claims grounded in fraudulent and non fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements. Id. at 1104. "Rule 9(b)'s heightened

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

pleading standards apply to claims for violations of the CLRA and UCL" where such claims are based on a fraudulent course of conduct. Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009).

A pleading is sufficient under Fed. R. Civ. P. 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973). This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth. In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Thus, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct alleged." Vess, 317 F.3d at 1106 (internal quotation marks and citations omitted). It is not sufficient to merely identify the transaction. Rather "[t]he plaintiff must set forth what is false or misleading about a statement and why it is false." Id. (citations omitted).

The Court finds that plaintiffs' claims are pled with the requisite particularity. First, contrary to L'Oreal's argument, the FAC alleges what statements plaintiffs were exposed to and reliance. The FAC specifically identifies representations on L'Oreal's website and the Serum's packaging, see FAC ¶¶ 22–23, 28, and alleges that plaintiffs relied upon these representations, FAC ¶ 29.[5] See In re Tobacco II Cases, 46 Cal. 4th 298, 306 (2009) (plaintiffs are not required "to plead or prove an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements when the unfair practice is a fraudulent advertising campaign."). Furthermore, there is no support for L'Oreal's argument that plaintiffs are required to allege "the location at which they purchased the Serum or how much they paid." Mot. to Dismiss at 10; see also Reply to

---

[5] L'Oreal argues that the FAC is deficient because it does not explicitly state that plaintiffs "viewed or read the Serum's packaging, or were exposed to any advertisements related to the Serum." Mot. to Dismiss at 12. The relevant allegation in the FAC provides: "The above-identified statements constitute express representations which were relied upon by Plaintiffs and members of the proposed class." FAC ¶ 29. Although the FAC does not explicitly state that plaintiffs viewed or read the statements, the allegation they relied on the statements necessarily suggests that plaintiffs were exposed to and read them. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (The complaint must be read in the light most favorable to the nonmoving party).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

Mot. to Dismiss at 7–8. Accordingly, the Court concludes that plaintiffs' FAC satisfies the pleading requirements set forth by Rule 9(b).

### 3. Unfair Competition Law

The Unfair Competition Law ("UCL") provides that "unfair competition . . . include[s] any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. . . ." Cal. Bus. & Prof Code § 17200. The statute is phrased in the "disjunctive," and, as a result, the statute is violated where a defendant's act or practice is unlawful, unfair, fraudulent or in violation of California's False Advertising Law ("FAL"). Prata v. Super. Ct., 91 Cal. App. 4th 1128, 1137 (2001). Plaintiffs allege claims under the unlawful, unfair and fraudulent prongs of the UCL.[6] See FAC ¶¶ 73–80.

#### i. Unfair Conduct

The unfairness prong of the UCL is broad, but the scope is not unlimited. Shvarts v. Budget Group, Inc., 81 Cal. App. 4th 1153, 1157 (2000). The test to determine what conduct constitutes unfair competition is whether members of the public are likely to be deceived. People v. Toomey, 157 Cal. App. 3d 1, 16 (1984). "California courts 'have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer.'" Von Koenig v. Snapple Beverage Corp., 713 F. Supp. 2d 1066, 1079 (E.D. Cal. 2010) (quoting Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008)).

Plaintiffs allege that the Serum is not safe to use with heated hair styling appliances. FAC ¶ 19. Accepting this fact as true, as the Court must at this stage, the Court finds that plaintiffs state a plausible claim that the representation on the Serum's packaging, "[f]or the sleekest look, style using brush and blowdryer," FAC ¶ 22 (emphasis supplied), is likely to deceive consumers by implying that the product can be safely used with heated hair styling appliances. See Von Koenig, 713 F. Supp. 2d at 1080 (consumers stated plausible claim that a reasonable consumer would be deceived by

---

[6] Plaintiffs assert a freestanding FAL claim that the Court addresses separately. See FAC ¶¶ 91–105.

Case 2:11-cv-01067-CAS -JC   Document 32   Filed 06/27/11   Page 14 of 19   Page ID #:244

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

the labeling of Snapple's drink products as "All Natural" because they did not believe that the drink would contain high fructose corn syrup); cf. Werberl v. Pepsico, Inc., No. C 09-04456 SBA, 2010 WL 267386, at *3 (N.D. Cal. July 2, 2010) (granting motion to dismiss on the grounds that no reasonable consumer is "likely to be deceived into believing that Cap'n Crunch derives nutrition from actual fruit by virtue of the reference to 'Berries' and because the Crunch Berries allegedly are 'shaped to resemble berries.'"). Moreover, the allegation that L'Oreal knew the Serum posed an unreasonable danger to consumers, but failed to warn consumers is sufficient to state a claim for unfair business practices under the UCL.  See In re Toyota Corp., 754 F. Supp. 2d 1145, 1175–76 (C.D. Cal. 2010) ("Toyota I") (allegation that Toyota sold vehicles with sudden unintended acceleration defect and failed to adequately investigate, disclose, and remedy defect was sufficient to state a claim under the unfairness prong of UCL).

### ii. Unlawful Conduct

California's UCL "borrow[s] violations of other laws and treats" them as unlawful business practices "independently actionable under section 17200." Farmers Ins. Exch. v. Super. Ct, 2 Cal. 4th 377, 383 (1992) (quotation omitted).  "Violation of almost any federal, state, or local law may serve as the basis for a UCL claim." Plascencia v. Lending 1st Mortgage, 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008).  In asserting a claim under the UCL's unlawful prong, plaintiffs rely exclusively on alleged violations of the FAL and the Consumer Legal Remedies Act ("CLRA").  See FAC ¶¶ 76–77. Because, as discussed herein, plaintiffs sufficiently allege violations of the FAL and CLRA, they also state a claim under the unlawful prong of the UCL.

### iii. Fraudulent Conduct

A fraudulent business practice, for purposes of the UCL, is one that is likely to deceive the public.  McKell v. Wa. Mut., Inc., 142 Cal. App. 4th 1457, 1471 (2006).  It may be based on representations to the public which are untrue, or those which may be accurate on some level, but nonetheless tend to mislead or deceive.  Id.

The Court has already found that plaintiffs state a plausible claim that L'Oreal's representations regarding the Serum are likely to deceive the public.  Nevertheless, L'Oreal argues that the California Court of Appeal's decision in Daugherty v. Am. Honda Motor Co., 144 Cal. App. 4th 824, 838 (2006) compels a different result.  Mot. to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

Dismiss at 14–15; Reply to Mot. to Dismiss at 12–13. The Court disagrees. In Daugherty, the court held that Honda's failure to disclose an engine defect which ultimately caused oil leaks after the vehicle's warranty expired did not constitute fraudulent conduct under the UCL. Id. However, Daugherty only addressed omissions, not affirmative misrepresentations. Here, plaintiffs allege both affirmative misrepresentations on the label of the Serum and a failure to disclose a defect. Moreover, the Court of Appeal's holding in Daugherty is premised on the finding that Honda was under no duty to disclose the engine defect because the only assumption or expectation buyers could have about the engine was that it would perform properly for the length of the warranty, and it did. Id. Here, by contrast, plaintiffs have alleged that they had a reasonable expectation that the Serum was safe for use with heated styling appliances due to the "prevalence of flammability warnings in the market place," see FAC ¶ 31, and that L'Oreal had a duty to disclose the flammable nature of the product, see FAC ¶ 32. The Court finds that these allegations are sufficient to state a claim under the fraudulent prong.

In sum, the Court concludes that plaintiffs state a plausible claim for violation of the UCL under all three prongs. Accordingly, the Court DENIES L'Oreal's motion to dismiss plaintiffs' UCL claim.

### 4. False Advertising Law

The FAL prohibits "any statement" that is "untrue or misleading" and made "with the intent directly or indirectly to dispose of" property or services. Cal. Bus. & Prof. Code § 17500. To state a claim for violation of the FAL, plaintiffs must allege that "members of the public are likely to be deceived." In re Tobacco II, 46 Cal. 4th at 312.

L'Oreal contends that plaintiffs have not pled their FAL claim with specificity because they fail "to set out or attach a representative selection of advertisements, to state the misrepresentations made by those advertisements, and to indicate the language or images upon which any implied misrepresentations are based." Mot. to Dismiss at 15–16 (quoting Comm. on Children's Television, Inc. v. Gen. Foods Corp., 35 Cal. 3d 197, 218 (1983)); see also Reply to Mot. to Dismiss at 13–14. The Court finds that plaintiffs have sufficiently "set out" the language upon which they base their FAL claim. Comm. on Children's Television, 35 Cal. 3d at 218. The FAC provides two separate quotations from L'Oreal concerning the Serum – one from the product's packaging, see FAC ¶ 22,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

and a block quote taken from L'Oreal's website, see FAC ¶ 28. The Court concludes that these allegations are more than enough to put L'Oreal on notice of the advertisements upon which plaintiffs base their FAL claim. Therefore, the Court DENIES L'Oreal's motion to dismiss plaintiffs' FAL claim.

### 5.  Consumer Legal Remedies Act

The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). The CLRA forbids 24 enumerated acts. See Cal. Civ. Code §§ 1770(a)(1)–(24). Plaintiffs allege that L'Oreal violated two such prohibitions: namely, (1) representing that the Serum has characteristics it does not have and (2) representing the Serum is of a particular standard or quality when it is not. FAC ¶ 69 (citing Cal. Civ. Code § 1770(a)(5) & (7)).

L'Oreal argues that plaintiffs fail to state a CLRA claim because they have not identified any misrepresentation by L'Oreal that the Serum has a characteristic or quality that it does not have. Mot. to Dismiss at 17–18 (citing Daugherty, 144 Cal. App. 4th at 834 (plaintiffs failed to state a CLRA claim where the complaint failed to identify any representation by Honda that its automobiles had any characteristic they did not have, or were of a standard or quality they were not, and all of buyers' cars functioned as represented throughout their warranty periods); Oestreicher v. Alienware Corp., 322 Fed. Appx. 489 (9th Cir. 2009) (affirming dismissal of CLRA claim where plaintiffs failed to allege defendant affirmatively misrepresented products)).

The Court notes that contrary to L'Oreal's argument, plaintiffs allege a violation of the CLRA based on both affirmative misrepresentations and omissions. First, plaintiffs maintain that the statement "[f]or the sleekest look, style using brush and blowdryer" affirmatively misrepresents that the Serum is safe to use with a blow-dryer. As discussed in more detail above, the Court finds that this statement plausibly represents that the Serum is safe to use with heated hairstyling products, when it is not. Therefore, unlike Oestreicher and Daugherty, plaintiffs have identified a representation by L'Oreal that the Serum has a characteristic that it does not have.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

  Second, plaintiffs argue that L'Oreal did not properly label the product as being flammable when they had actual knowledge that it contained flammable ingredients and would ignite when used in conjunction with heated hair care appliances. Opp'n to Mot. to Dismiss at 22. "A fraudulent omission is actionable under the CLRA if the omission is 'of a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" Toyota I, 754 F. Supp. 2d at 1172 (quoting Daugherty, 144 Cal. App. 4th at 835). A plaintiff may show that a defendant had a duty to disclose under four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." LiMandri v. Judkins, 52 Cal. App. 4th 326, 336 (1997). Plaintiffs have stated a plausible claim that L'Oreal had a duty to disclose under the third and fourth LiMandri factor. According to plaintiffs, L'Oreal partially represented that the Serum is safe to use with blowdryers, but suppressed the material fact that the product may ignite when used in combination with heated hair care appliances. FAC ¶¶ 11, 22, 23, 27.

  L'Oreal further argues that plaintiffs cannot satisfy the CLRA standing requirements because they have not suffered damages as a result of the violation. Mot. to Dismiss at 18; Reply to Mot. to Dismiss at 14. The Court finds that plaintiffs have sufficiently alleged that they suffered damages in the nature of an economic loss.

  Accordingly, the Court DENIES L'Oreal's motion to dismiss plaintiffs' claim for a violation of the CLRA.

### 6. Implied Warranty Claims

  Plaintiffs allege that L'Oreal breached the implied warranty of merchantability because the Serum was defective and unsafe, and not fit for the ordinary purpose which it is used. FAC ¶¶ 49–50; see also FAC ¶¶ 85–88. Under the UCC, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . . Goods to be merchantable must be . . . fit for the ordinary purposes for which such goods are used . . . ." Cal. Com. Code § 2134(2)(c). Unlike express warranties, which are contractual in nature, the implied

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

warranty of merchantability arises by operation of law. Am. Suzuki Motor Corp. v. Super. Ct., 37 Cal. App. 4th 1291, 1295 (1995).

L'Oreal maintains that plaintiffs fail to state implied warranty claims under the UCC and California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act") because they have not alleged that the Serum did not perform as it was supposed to. Mot. to Dismiss at 18–20; Reply to Mot. to Dismiss at 15–16. In support of its argument, L'Oreal relies on American Suzuki, which held that a class of vehicle owners who claimed the vehicle was prone to roll-over accidents should be decertified because the evidence established that only a small percentage of the vehicles had been involved in accidents. Id. at 1296–98. The Court finds that American Suzuki is of little relevance to whether plaintiffs adequately state a claim at the pleading stage. See Toyota I, 754 F. Supp. 2d at 1186 (distinguishing American Suzuki on similar grounds and rejecting defendants' argument that plaintiffs whose vehicles did not manifest the alleged defect failed to state a claim for breach of the implied warranty). Thus, the question of whether L'Oreal breached the implied warranty of merchantability is better decided on a more complete record, that includes evidence of the relative occurrence of the alleged defect. Accordingly, the Court DENIES L'Oreal's motion to dismiss plaintiffs' claims under the UCC and the Song-Beverly Act.

### B.     Motion to Strike Class Action Allegations Pursuant to Rule 12(f)

L'Oreal moves for an order, pursuant to Fed. R. Civ. P. 12(f), striking plaintiffs' class action allegations. See Mot. to Strike at 1–12. L'Oreal argues that this case is inappropriate for class treatment because plaintiffs' classes, as defined, include putative class members without Article III standing. Id. at 3–8. L'Oreal further contends that individual issues predominate over plaintiffs' class claims, and that the FAC is merely an attempt to bring a nationwide products liability class action. Id. at 8–12.

The Court finds that L'Oreal's arguments are better addressed on a motion for class certification with a more complete record. The Court recognizes that there is no per se rule forbidding L'Oreal from filing a preemptive motion to deny certification before plaintiffs have filed their motion for class certification. See Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 939–40 (9th Cir. 2009). Nevertheless, the Court concludes that L'Oreal's motion is premature given that the parties have not commenced discovery, no Rule 16 conference has occurred, and plaintiffs have not filed a motion for class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. v. L'OREAL, USA, INC., ET AL. | | |

certification.  See In re Wal-Mart Stores, Inc. Wage and Hour Litigation, 505 F. Supp. 2d 609, 614–16 (N.D. Cal. 2007) (holding that Wal-Mart's motions to dismiss or strike class allegations were premature where "Wal-Mart has not answered in this case, discovery has not yet commenced, and no motion for class certification has been filed."); see also Faktor v. Lifestyle Lift, No. 1:09-cv-511, 2009 WL 1565954, at *2 (N.D. Ohio June 3, 2009) ("The Defendants' arguments on class certification are premature . . . .  This Court will not determine class certification at this early stage. Before ruling on class certification this Court must conduct a rigorous analysis.  A motion to strike class allegations is not a substitute for class determination and should not be used in the same way.") (internal quotation marks and citations omitted); Beauperthuy v. 24 Hour Fitness USA, Inc., No. 06-0715 SC, 2006 WL 3422198, at *3 (N.D. Cal. Nov. 28, 2006) ("Defendants' Rule 23(d)(4) [now Rule 23(d)(1)(D)] motion is an improper attempt to argue against class certification before the motion for class certification has been made and while discovery regarding class certification is not yet complete . . . .  As the Court has yet to address whether the part of Plaintiffs' action brought under Rule 23 may proceed as a class action, Rule 23(d)(4) has no application to the present situation before it.") (citing Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1795).  Accordingly, the Court DENIES L'Oreal's motion to strike the class action allegations.

## V.    CONCLUSION

In accordance with the foregoing, the Court hereby DENIES L'Oreal's motion to dismiss pursuant to Rule 12(b)(6) and L'Oreal's motion to strike class action allegations pursuant to Rule 12(f).

IT IS SO ORDERED.

|  | 00 | : | 13 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |