UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|----------|-------------------------------------------------------------|------|-------------|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

Present: The Honorable   CHRISTINA A. SNYDER

| CATHERINE JEANG | Laura Elias | N/A |
|-----------------|-------------|-----|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|-----------------------------------|-----------------------------------|
| Scott Kamber | Dennis Ellis |
| Grace Parasmo | Katherine Murray |
| David Parisi | Nicholas Begakis |

Proceedings:      **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**
                  (filed 2/1/2012)

## I.    INTRODUCTION

On February 3, 2011, plaintiffs Jill Guido, a California resident, and Natalie Lefebvre, a Texas resident, commenced this action in this Court by filing a complaint against defendants L'Oreal, USA, Inc. and L'Oreal USA Products, Inc. in Case No. CV 11-1067 CAS (JCx).  On April 1, 2011, Guido and Lefebvre filed a first amended complaint.

Meanwhile, on February 4, 2011, plaintiffs Catherine Altamura, a California resident, and Lisa Pearly, a New York resident, filed a similar complaint in the United States District Court for the Southern District of New York against the same defendants. On May 5, 2011, Altamura and Pearly voluntarily dismissed the New York action and refiled the action in this Court on June 30, 2011.  See Case No. CV 11-5465 CAS (JCx).

By order dated September 19, 2011, the Court consolidated the two cases for pretrial purposes.  On April 3, 2012, the parties stipulated to dismiss Guido as a named plaintiff.  On April 23, 2012, plaintiffs indicated their intent to seek a stipulation to dismiss Lefebvre as a class representative with prejudice.  The complaints are brought on behalf of putative classes of California and New York residents who purchased a L'Oreal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

hair care product known as Garnier Fructis Sleek & Shine Anti-Frizz Serum ("Serum").[1] The complaints generally allege that defendants (1) failed to properly label Serum as being flammable or combustible when near flames, sources of ignition, or high heat producing styling appliances, and (2) made affirmative misrepresentations on Serum's packaging and in advertisements that suggested it was safe to use Serum in proximity to such appliances.

Plaintiffs filed the instant motion for class certification on February 2, 2012.[2] Plaintiffs seek certification of a California class and New York class for any person who purchased Serum during the period from February 4, 2008, to the present (the "Class Period"), asserting the following claims:

(1) A California class for claims arising under Cal. Bus. & Prof. Code §§ 17200 and 17500 et seq. ("UCL"); the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. ("CLRA"); and the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 & 1791(1)(a), (b) ("Song-Beverly Act"); and

(2) A New York class for claims arising under New York's General Business Law §§ 349 and 350 ("GBL"), for deceptive acts and practices and false advertising, respectively.

Defendants filed an opposition to plaintiffs' motion on April 16, 2012.  Plaintiffs filed a reply on April 23, 2012.  The Court held a hearing on May 7, 2012.  After

---

[1] Plaintiffs initially brought suit on behalf of a class of Texas residents as well, but have since voluntarily dismissed all claims related to Texas law and Texas plaintiffs.  See Pls' Reply at 3 n.2.

[2] Plaintiffs filed the instant motion in Case No. CV 11-1067 CAS (JCx), and not Case No. CV 11-5465 CAS (JCx).  Because the actions have been consolidated, the Court deems the motion to have been filed in both cases.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

carefully considering the arguments set forth by both parties, the Court finds and concludes as follows.

## II.    BACKGROUND

Serum is a hairstyling product manufactured, distributed, and marketed by defendants for sale in retail outlets nationwide.  Declaration of Grace Parasmo ("Parasmo Decl.") Exh. 1, at 24–25 (deposition of Garnier Senior VP Katheryn Peeler). Serum was launched in 2004 for a suggested retail price of $5.99 per bottle, which has remained constant throughout the product's existence in the market.  Id. at 69:9–12.  During the Class Period, defendants sold approximately 9.9 million units of Serum throughout the nation.  Id., Exh. 2 at 1.

Serum's label and packaging has changed three times since its introduction to the market.  When it was launched in 2004, Serum was sold in a clear green round-shaped bottle with a label that included a flammability warning written in green text.  See id., Exh. 3 ("Avoid Fire, Flame, Smoking and Heat (Except For Styling Appliances) During Application and Until Hair is Completely Dry.").  Near the end of 2006, Garnier removed denatured alcohol as an ingredient in Serum in order to comply with California's Volatile Organic Compound regulations, Cal. Code Regs. tit. 17, § 94509(a).  Declaration of Katherine F. Murray ("Murray Decl."), Exh. B at 56:3–17 (Peeler deposition).  At the beginning of 2007, Garnier altered the bottle's shape, from a round shape to a bell shape, and removed the flammability warning.  Id. at 61:21–62:19.[3]

The 2004 and 2007 iterations of the bottle contain identical directions, instructing consumers to use the product as follows:

DIRECTIONS: Dispense 1 pump of serum, or as much as needed for your hair type, into the palms of your hands.  Apply uniformly to towel-dried or dry hair.

---

[3]Defendants manufactured and distributed a third bottle beginning in 2011, but it is nearly identical to the 2007 bottle.  Parasmo Decl., Exh. 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|----------|----------|------|------|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

Do not rinse.  For sleekest look, style using brush and blowdryer.  For best results, use Garnier Fructis Sleek and Shine System.

Parasmo Decl., Exh. 3.

Both labels also list the ingredients, including cyclopentsiloxane and dimethiconol. According to plaintiffs, those two ingredients—and not the denatured alcohol that was removed in late 2006—are the ingredients that render Serum flammable.  Mot. at 3. Defendants maintain that the denatured alcohol was the only flammable ingredient used in any iteration of Serum.[4]  Opp'n at 5.

---

[4]"When considering class certification under Rule 23, district courts are not only at liberty to, but must perform 'a rigorous analysis [to ensure] that the prerequisites of Rule 23(a) have been satisfied.'"  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 980 (9th Cir. 2011) (quoting Dukes, 131 S.Ct. at 2551)).  "In many cases, that rigorous analysis will entail some overlap with the merits of plaintiff's underlying claim."  Id. (internal quotation marks and citation omitted).  Thus, the Court is "required to resolve any factual disputes necessary to determine whether there [are common questions] that could affect the class *as a whole*."  Id. at 983 (emphasis in original).

The Court need not resolve at this stage whether Serum is in fact flammable, because that issue is not probative of whether there are "plausible classwide methods of proof" with regard to plaintiffs' claims that the average reasonable consumer was misled by defendants' advertising and labeling of Serum.  Wolph v. Acer Am. Corp., 272 F.R.D. 477, 487 (N.D. Cal. 2011); see also Costco, 657 F.3d at 983 n.8 (noting that a court "is required to examine the merits . . . *only* inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims") (emphasis added); Dukes, 131 S.Ct. at 2552 n.6 (noting that Rule 23 does not authorize inquiry into the merits of a claim for purposes other than determining whether certification is proper).  Accordingly, the Court addresses the merits of plaintiffs' claims only insofar as they "overlap" with Rule 23 requirements.  Costco, 657 F.3d at 981.  For this reason, defendants' evidentiary objections to the Parasmo

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

## III.   LEGAL STANDARD

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing Crown, Cork & Seal Co. v. Parking, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure 23 governs class actions. A class action "may be certified if the trial court is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982).

To certify a class action, plaintiffs must set forth facts that provide prima facie support for the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. ---, ---, 131 S.Ct. 2541, 2548 (2011); Dunleavy v. Nadler (In re Mego Fir. Corp. Sec. Litig.), 213 F.3d 454, 462 (9th Cir. 2000). These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." Falcon, 457 U.S. at 155 (quoting Califano v. Yamasaki, 442, U.S. 682, 701 (1979)).

If the Court finds that the action meets the prerequisites of Rule 23(a), the Court must then consider whether the class is maintainable under Rule 23(b). Dukes, 131 S.Ct. at 2548. Rule 23(b)(3) governs cases where monetary relief is are the predominant form of relief sought, as is the case here. A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v.

---

Declaration—in which defendants challenge, inter alia, statements to the effect that defendants "refused" to provide merits discovery—are overruled as to these issues at this stage of the proceedings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)).  The predominance inquiry measures the relative weight of the common to individualized claims.  Id.  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy."  Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001) (citing Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996)).  In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests members in the class have in individually controlling the prosecution or defense of the separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action.  Id. at 1190–1993.  "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate."  Id. (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 at 535–39 (2d. 3d. 1986)).

More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . . compliance with the rule—that is he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  Dukes, 131 S.Ct. at 2551.  This requires a district court to conduct "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim."  Id.

## IV.   DISCUSSION

### A.   Nature of Plaintiffs' Claims and Issue of Standing

As an initial matter, the parties dispute the nature of plaintiffs' claims.  Plaintiffs assert that their claims are grounded in consumer protection laws which are "ideal" for class certification.  Mot. at 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

Defendants respond that plaintiffs' consumer protection claims are masquerading as products liability claims which are not amenable to class treatment. Opp'n at 10–11. Defendants assert that plaintiffs "seek to cast their products liability claims as restitutionary claims under the UCL" by "exempt[ing] all parties that suffered actual physical injury from their class" and instead focusing on "members who allegedly paid more for the Serum than they otherwise would have had it included an adequate warning," which is insufficient to confer Article III standing. Id. at 12. Further, according to defendants, even if plaintiffs' theory is one of economic injury, none of the named plaintiffs have alleged that they suffered economic loss. Id. at 13. Moreover, defendants assert that the UCL (and GBL) require each individual plaintiff to demonstrate reliance to succeed on such an economic theory of injury. Id. Thus, defendants maintain that even if the named plaintiffs have standing, certain putative class members lack standing. See id. Accordingly, defendants argue that plaintiffs' claims are not suitable for class treatment. Id.

In reply, plaintiffs argue that  defendants' contention that no plaintiff suffered economic injury "grossly distorts" the theory of plaintiffs' case and the testimony of the named plaintiffs, both of which demonstrate that plaintiffs would not have purchased Serum for the price they paid, or would not have purchased it at all, had they known of its flammable characteristics. Reply at 4–5. Further, plaintiffs contend that they suffered a loss in value and usefulness of Serum which is also sufficient to confer standing under the UCL and GBL. Id. at 5 (citing Keilholz v. Lennox Hearth Prods Inc., 268 F.R.D. 330 (N.D. Cal. 2010)). Finally, plaintiffs argue that the UCL does not require a showing of individual reliance as to absent class members. Id. at 6.

The Court finds that plaintiffs have adequately alleged economic injury to satisfy Article III standing on behalf of themselves and the putative classes. "No class may be certified that contains members lacking Article III standing." Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 594 (9th Cir. 2011) (internal quotation marks and citation omitted). "[S]tanding requires that (1) the plaintiff has suffered an injury in fact . . . (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." Id. (quoting Bates v. United Parcel Svc., Inc., 511 F.3d 974, 988 (9th Cir. 2007)). Not all plaintiffs and class members must demonstrate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

standing: "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1021 (9th Cir. 2011) (quoting Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007) (en banc)); Costco, 657 F.3d at 979 ("[O]nly one named [p]laintiff must meet the standing requirements."). Economic injury is cognizable under the UCL and sufficient to satisfy Article III standing, so long as the plaintiff "lost money or property as a result of the unfair competition" and demonstrates a "causal connection" between the UCL violation and the economic injury. See, e.g., Rubio v. Capital One Bank, 613 F.3d 1195, 1204 (9th Cir. 2010); Aron v. U-Haul Co. of California, 143 Cal. App. 4th 796, 802–03 (Cal. Ct. App. 2006); Cal. Bus. & Prof. Code § 17204. Here, both named plaintiffs testified that, had they known Serum was flammable, they would have paid less than its retail price or would not have purchased it at all. See Declaration of David C. Parisi ("Parisi Decl.") Exh. 19 (Altamura deposition) at 144:9–10, 14–15; Exh. 20 (Pearly deposition) at 219:2–9, 186:17–187:6, 143:1–3. Moreover, plaintiffs also testified that they suffered a loss in value and usefulness of Serum. Parisi Decl., Exh. 19 at 142:4–12; Exh. 20 at 144:22–145:12; see Keilholz v. Lennox Hearth Prods Inc., 268 F.R.D. 330, 334–36, 343 (N.D. Cal. 2010) (granting motion to certify class and concluding that class of fireplace purchasers had standing based on an economic injury of loss of value). Thus, the named plaintiffs have adequately demonstrated standing based on a claimed economic injury. Mazza, 666 F.3d at 594; Stearns, 655 F.3d at 1021.

Further, the Court rejects defendants' argument that each class member must demonstrate reliance under the UCL. "Under California's UCL, restitution is available to absent class members without individualized proof of deception, reliance, or injury." Mazza, 666 F.3d at 595 (quoting In re Tobacco II, 46 Cal. 4th at 320, and rejecting defendant's contention that "Tobacco II impermissibly allows a class to 'include members who suffered no injury in fact' in violation of Article III"); Stearns, 655 F.3d at 1020–21 ("Nor do we agree with Appellees' argument that because it need not be shown that class members have suffered actual injury in fact connected to the conduct of the Appellees, the alternative to the district court's ruling must be that the class lacks standing under Article III."). Under California law, "a presumption or at least an inference[] of reliance arises whenever there is a showing that a misrepresentation was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

material."[5]  In re Tobacco II, 46 Cal. 4th at 326–27.  Thus, so long as plaintiffs establish that defendants' omissions and misrepresentations are "material," they may bring a UCL claim on behalf of a class without individualized proof of reliance.[6]  Id.

---

[5]Webb v. Carter's Inc., 272 F.R.D. 489 (C.D. Cal. 2011), upon which defendants rely for the proposition that each class member must demonstrate standing, is unpersuasive.  First, this Court already declined to follow Webb as "not binding precedent."  Dkt. No. 32 at 10 n.4.  Second, the court in Webb acknowledged that "there is no controlling authority requiring absent class members, as opposed to the named plaintiffs, to satisfy Article III's standing requirements," but nevertheless concluded that they must do so.  272 F.R.D. at 497.  Finally, and most importantly, Webb was decided prior to the Ninth Circuit's decisions in Mazza and Stearns.  E.g. Stearns, 655 F.3d at 1020 ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements.") (internal quotation marks and citation omitted).

[6]Defendants submitted the declaration of Dominique M. Hanssens in support of its opposition.  Hanssens opines that it is "speculative to conclude that the lack of a warning or the presence of a misleading warning on product packaging has the same impact on all consumers" and might "le[a]d to a buying decision."  Hanssens Decl., ¶ 19.  Hanssens also stated that "one cannot conclude that the omission of a flammability warning has enabled L'Oreal to charge a premium for Serum."  Id. ¶ 27.  Plaintiffs filed an objection to Hanssens's declaration on the ground that her opinions are not relevant because "they do not bear on the materiality of [defendants'] misrepresentations and omissions concerning Serum's flammability and combustibility when near flames."  Dkt. 72 at 3–4.

The Court agrees that Hanssens's declaration is not relevant to the determination of class certification in this case.  As discussed above, the materiality of defendants' alleged misrepresentations and omissions is established "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question."  Stearns, 655 F.3d at 1022.  Thus, whether the lack of a warning label may not have had the "same impact on all consumers" and may not have informed an individual's buying decision is not relevant, because the standard is an objective one.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|----------|---|------|-------------|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

The Court now turns to the Rule 23 factors.

**B.      Rule 23(a) Requirements**

**1.      Numerosity**

Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable.  See Fed. R. Civ. P. 23(a)(1).  Here, the proposed California and New York classes are sufficiently numerous.[7]  During the Class Period, defendants manufactured and shipped approximately 9.9 million units of Serum nationwide. Parasmo Decl., Exh. 2.  According to 2010 U.S. census data, California residents make up 12 percent of the U.S. population, while New York residents make up 8.1 percent of the U.S. population.  See id., Exh. 15.  Assuming defendants sell Serum proportionately across the country, it can be estimated that approximately 1.1 million units were sold in California and 800,000 units were sold in New York.  See Arnold v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439, 448 (N.D. Cal. 1994) (extrapolating census data in order to find numerosity); 1 Robert Newberg, NEWBERG ON CLASS ACTIONS, § 3:3 (4th ed. 2002) ("Census data are frequently relied on by courts in determining the size of proposed classes.").

---

As set forth more fully herein, plaintiffs have testified that they would not have purchased, or would not have paid as much for, Serum had they known it was flammable. See infra, Section IV.B.2.  This is sufficient to raise a classwide inference of causation between the alleged wrongful conduct and alleged economic harm.  See infra, Section IV.C.  Accordingly, the Court SUSTAINS plaintiffs' objections to Hanssens's declaration on the ground that her opinions are not relevant at this stage.  See In re Zurn Pex Plumbing Prods. Liability Litig., 644 F.3d 604, 613 (8th Cir. 2011).

[7]Defendants do not challenge this factor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

Accordingly, the Court finds that the numerosity requirement is satisfied.

### 2.    Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . [and] [t]heir claims must depend upon a common contention . . . of such nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 131 S.Ct. at 2551 (internal quotation marks and citations omitted). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Id.

Plaintiffs argue that commonality is satisfied because a determination of whether defendants' omissions, packaging, and advertisements related to Serum were material and misleading will resolve an issue that is "central to the validity" of each class member's claims—namely, "whether Serum was promoted in a manner likely to deceive the public under an objective 'reasonable consumer' standard because its hazards were not adequately disclosed." Mot. at 9 (quoting Dukes, 131 S.Ct. at 2551; Rubio v. Capital One Bank, 613 F.3d 1195, 1204 (9th Cir. 2010)). According to plaintiffs, the two relevant types of bottles of Serum sold during the Class Period both failed to disclose that Serum was flammable and should not be used with heated styling appliances and that such omissions were "consistent across the nation for each of the formulations of Serum." Id. at 10. Thus, plaintiffs assert that the claims of all class members "stem from the same source" such that the commonality requirement is "easily satisfied." Id. (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019–20 (9th Cir. 1998)).

In opposition, defendants assert that "there is not even commonality among the three named [p]laintiffs, let alone across the putative class." Opp'n at 13. According to defendants, claims brought under the UCL require plaintiffs to show "some connection between the defendant's alleged improper conduct and the unnamed class members who seek restitutionary relief." Id. at 14 (quoting Sevidal v. Target Corp., 189 Cal. App. 4th 905, 924 (Cal. Ct. App. 2010)). Thus, defendants contend that a class that includes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

persons who purchased a product for reasons other than defendants' alleged misconduct—that is, for reasons other than defendants' alleged failure to disclose Serum's flammability—cannot be certified. Id. (citing Pfizer Inc. v. Sup. Ct. (Galfano), 182 Cal. App. 4th 622, 631 (Cal. Ct. App. 2010)). Here, defendants maintain that plaintiff Pearly purchased Serum after reading advertisements stating that it would provide sleekness, detangle her hair, and for its low price, while plaintiff Altamura purchased Serum based on her prior experience with the product and its low price. Id. at 15. Accordingly, defendants assert that "[n]one of the named [p]laintiffs were even concerned with flammability issues when they purchased Serum." Id. (relying on Sanchez v. Wal-Mart Stores, Inc., 2009 U.S. Dist. Lexis 48428, at *8 (E.D. Cal. May 28, 2009) (denying class certification of purchasers of a model of stroller that lacked a safety warning because, for many putative class members, "the 'warning' would have made no difference in their purchase decision")).

The Court finds that plaintiffs have satisfied the commonality requirement. The "common factual and legal questions" that will be presented in this case are as follows:

- Whether Serum's packaging and marketing materials are unlawful, unfair, deceptive, or misleading to reasonable consumers under the UCL, CLRA, and GBL;

- Whether the labels that instructed consumers to use "as much [Serum] as needed for your hair type," "do not rinse," and "[f]or the sleekest look, style using brush and blowdryer" are deceptive to the average reasonable consumer in light of Serum's alleged flammability;

- Whether a reasonable consumer would expect that Serum would contain a warning as to its flammability pursuant to the requirement of the Food, Drug and Cosmetic Act's regulations, 21 C.F.R. 740.1, that hazardous cosmetics contain appropriate labels;

- Whether plaintiffs had a reasonable expectation that Serum was not dangerous around flames or other sources of heat;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

- Whether defendants tested Serum "under conditions of customary use and reasonably foreseeable conditions of misuse" under the FDA's labeling guidelines;

- Whether defendants had a duty to disclose the alleged flammability of Serum;

- Whether it was foreseeable to defendants that consumers would use Serum near heated sources;

- Whether defendants concealed material information regarding the flammability of Serum from plaintiffs;

- Whether Serum is in fact flammable; and

- What the true market value of Serum is.

Because Serum was packaged and sold uniformly across the nation, resolution of these questions will resolve "in one stroke" issues that are "central to the validity" of each class member's claims. Dukes, 131 S.Ct. at 2551. Defendants' argument that commonality is not satisfied because class members may have purchased Serum for a variety of reasons is unpersuasive. First, both named plaintiffs testified that, had they known Serum was flammable, they would not have purchased the product for the price they paid, or would not have purchased it at all. Parisi Decl., Exh. 19 at 144:9–10, 14–15; Exh. 20 at 219:2–9, 186:17–187:6, 143:1–3. The plaintiffs' testimony demonstrates that the alleged omissions and misrepresentations were material to their purchasing decision, and under the UCL, "[a] presumption, or at least an inference of reliance arises whenever there is a showing that a misrepresentation was material." In re Tobacco II Cases, 46 Cal. 4th 298, 327 (2009). Second, the focus of a UCL claim is "on the defendant's conduct . . . in service of the [UCL's] larger purpose of protecting the general public," and not on the reasons each class member purchased Serum. Id. at 312. As mentioned supra, "relief under the UCL is available without individualized proof of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|----------|-------------------------------------------------------------|------|-------------|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

deception, reliance and injury." Id. at 320.  Accordingly, the issues of whether defendants' alleged omissions and misrepresentations about the flammability of Serum are unlawful, deceptive, unfair, or misleading to reasonable consumers are the type of questions tailored to be answered in "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Dukes, 131 S.Ct. at 2551. See also Wiener v. Dannon Co., Inc., 255 F.R.D. 658, 664 (C.D. Cal. 2009) (concluding that commonality was satisfied for a class of consumers who purchased Dannon yogurt products because the "class members clearly share common legal issues regarding Dannon's alleged deception and misrepresentations in its advertising and promotion of the Products").[8]

---

[8]Sanchez, upon which defendants chiefly rely, is unpersuasive.  Its reasoning— that putative class members' individual reasons for purchasing a product bears on commonality under the UCL—is directly contradicted by the In re Tobacco II decision, which was handed down at approximately the same time as Sanchez. Compare 2009 U.S. Dist. Lexis 48428 at *8 with 46 Cal. 4th at 312, 327.  The Ninth Circuit has adopted the reasoning behind In re Tobacco II with regard to reliance under the UCL.  See Mazza, 666 F.3d at 595 ("Under California's UCL, restitution is available to absent class members without individualized proof of deception, reliance, or injury.").

Further, defendants' reliance on Mazza is misplaced because the facts of Mazza are distinguishable from the present case.  There, the Ninth Circuit "agree[d] with Honda's contention that the misrepresentations at issue here do not justify a presumption of reliance" under the UCL because "it is likely that many class members were never exposed to the allegedly misleading advertisements, insofar as advertising of the challenged system was very limited."  Mazza, 666 F.3d at 595.  Here, defendants do not contend that the misrepresentations were contained in limited advertisements to which many class members would not have been exposed.  Rather, the alleged omissions and misrepresentations in this case relate to the bottle of Serum itself, which has not materially changed over the course of the Class Period.  Accordingly, the class members—who are defined, inter alia, as purchasers and users of Serum—were necessarily "exposed" to defendants' alleged omissions and misrepresentations, in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|----------|-------------------------------------------------------------|------|-------------|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

The Court therefore concludes that the commonality requirement has been satisfied.

### 3.    Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Wolin v. Jaguar Land Rover North Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Costco, 657 F.3d at 984 (quoting Hanlon, 976 F.3d at 508)). Thus, typicality is satisfied if the plaintiffs' claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020.

Plaintiffs assert that typicality is satisfied because plaintiffs' and the proposed class members' claims arise from the same course of conduct: defendants' alleged mislabeling and false marketing of Serum. Mot. at 11. Additionally, plaintiffs contend that plaintiffs and class members suffered the same type of economic injury by suffering a monetary loss as a result of purchasing a product they otherwise would not have purchased but-for defendants' omissions and misrepresentations. Id. In sum, plaintiffs contend that the "ultimate success" of plaintiffs' claims depends on proving an identical set of facts and relying on the same supporting law as every other class member. Id.

Defendants respond that plaintiffs' claims are not typical for many of the same reasons their claims do not satisfy the commonality requirement. Opp'n at 19. Defendants assert that none of the named plaintiffs "paid a premium" for Serum, so they therefore "cannot represent those who claim to have paid a premium." Id. at 20 (citing

contrast to the putative class in Mazza. Cf. Mazza, 666 F.3d at 595; Cohen, 178 Cal. App. 4th at 980.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

J.P. Morgan & Co. v. Sup. Ct. (Heliotrope Gen., Inc.), 113 Cal. App. 4th 195, 212 (Cal. Ct. App. 2003)). Further, defendants argue that the named plaintiffs were not concerned with Serum's flammability. Id. at 21. Finally, defendants argue that the named plaintiffs are subject to unique defenses. Id. at 22 (contending that Pearly admits she read the warning label and that neither plaintiff relied on the absence of a flammability warning when they purchased Serum).

The Court finds that plaintiffs have satisfied the typicality requirement. Contrary to defendants' assertion, each named plaintiff testified that she would not have purchased Serum or would have paid less for Serum had she known it had flammable characteristics.[9] Parisi Decl., Exh. 19 at 144:9–10, 14–15; Exh. 20 at 219:2–9, 186:17–187:6, 143:1–3. Thus, plaintiffs allege to have suffered the same type of economic injury and seek the same type of damages (namely, a refund of the purchase price) as the putative class members. As such, plaintiffs' interests "align[] with the interests of the class." Wolin, 617 F.3d at 1175. Further, California law permits plaintiffs to seek recovery of a "price premium," regardless of whether plaintiffs were able to quantify the premium that was paid or identify other products sold at a lower price that included a flammability warning. See Kwikset Corp. v. Sup. Ct., 51 Cal. 4th 310, 329 (2011) ("For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately. This economic harm—the loss of real dollars from a consumer's pocket—is the same whether or not a court might objectively view the products as functionally equivalent.");

---

[9]For this reason, the Court rejects defendants' contention that the named plaintiffs are subject to unique defenses. Although plaintiffs' testimony suggest that there were a variety of considerations involved in their purchasing decision, they do not negate the plaintiffs' testimony that they would not have purchased Serum, or would not have paid as much for it, had they known of its flammable characteristics at the time of sale. Thus, the defendants have not shown that whatever individual defenses may exist defeat the typicality of plaintiffs' claims. See Costco, 657 F.3d at 984.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

Degelmann v. Advanced Med. Optics, Inc., 659 F.3d 835, 840 (9th Cir. 2011) (holding that the plaintiffs "presented evidence that they were deceived into purchasing a product that did not disinfect as well as it represented.  Had the product been labeled accurately, they would not have been willing to pay as much for it as they did, or would have refused to purchase the product altogether.  The district court's reasoning—that class members would have bought other contact lens solution, and therefore suffered no economic harm—conceived of injury in fact too narrowly").  Finally, even if the amount of premium varies among class members, such differences in the amount of damages is insufficient to defeat class certification.  Stearns, 655 F.3d at 1026 ("We have held that the mere fact there might be differences in damages calculations is not sufficient to defeat class certification . . . .") (internal quotation marks and citations omitted).

Accordingly, the Court finds that plaintiffs' claims are "reasonably co-extensive with those of absent class members" to satisfy the typicality requirement.  Hanlon, 150 F.3d at 1020.  See also Chavez v. Blue Sky Natural Beverage Co., 268 F.R.D. 365, 378 (N.D. Cal. 2010) (finding typicality with regard to plaintiff's claim that a mass-marketed product label was misleading); Rivera v. Bio Engineered Supplements & Nutrition, Inc., 2008 WL 4906433, at *7 (C.D. Cal. Nov. 13, 2008) ("[T]he typicality requirement is not particularly strict and may be satisfied even where there are some factual dissimilarities between the claims of the class representative and the claims of other class members.").

**4.    Adequacy of Representation**

To establish adequacy of representation, the issue is whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class."[10]  Hanlon, 150 F.3d at 1020.

---

[10]Although defendants did not appear to contest the adequacy requirement in their briefing, at oral argument counsel for defendants questioned whether Altamura may properly serve as class representative for the California class.  According to defendants' counsel, Altamura testified that she would have used Serum differently had she known it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

was flammable, rather than testifying that she would not have purchased Serum or would have paid less for Serum. Defendants' counsel relied on the following excerpt from Altamura's deposition:

> Q. Okay. If we can go back to Exhibit 10. This is the round bottle that you recall purchasing in Australia?
> A. Uh-huh.
> Q. If you look at Exhibit 10, there is a warning on the bottom of that under the ingredients list. Do you recall reading that warning at any time?
> A. No, I don't.
> Q. If you had read that warning, would you still have purchased the product?
> A. I would be paying attention to the way it's telling me to use it. So flammable until dry.
> Q. Flammable until dry?
> A. So obviously, if I have it, I wouldn't use it the same way I'm using it. It would be simply something I use right at the end. I wouldn't use it the same way I've been using it.

Altamura Depo., at 105:10–106:2 (attached as Exh. D to Murray Decl. and Exh. 19 to Parisi Decl.).

Defendants' counsel asserted that this passage demonstrates that Altamura cannot represent California purchasers of Serum because she would have purchased Serum even had she been warned of its flammable characteristics.

Counsel's argument is unpersuasive. It is plain that the above-quoted statements were given in the context of a hypothetical posed by the questioner. At several other points in her testimony, Altamura stated explicitly that she would not have purchased Serum had she known it was potentially dangerous to use with heated styling appliances. See, e.g., id. at 140:14–16 ("Q. If the warning had said, 'Do not use with heated styling devices,' would you have purchased it? A. No."); 162:14–17 ("Q. You would not have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

Here, the interests of plaintiffs and members of the proposed classes are aligned, as both seek to prove that defendants committed the alleged material omissions and misrepresentations.  See id.  Further, there is no dispute that plaintiffs and plaintiffs' counsel have and will continue to "prosecute the action vigorously on behalf of the class."  Id.  The adequacy requirement of Rule 23(a) is therefore satisfied.

In accordance with the foregoing, the Court finds that all four requirements of Rule 23(a) have been satisfied.

**C.     Rule 23(b) Requirements**

Under Rule 23(b)(3), class certification is appropriate "if Rule 23(a) is satisfied" and if "the court finds that [1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and that [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162–63 (9th Cir. 2001).

---

purchased [Serum] if it was unsuitable for use in conjunction with styling appliances?  A. Yes."); 70:16–18 ("Q. Why would [a flammability warning] deter you?  A. Because I know my routine.  I know I'm using flat-irons, blow-dryers, and I have to be careful."); 168:20–24 ("Q. The flammability warning [on a separate Pantene product] did not scare you away from using the product?  A. As [I] stated before, if it said I couldn't use it with styling, like, a flat-iron or hair dryer, that would have made a difference in purchasing."); 111:22–24 ("Q. Why did you not finish this bottle [of Serum] that you brought in?  A. Because I found out it was flammable."); and 130:8–10 ("Q. And what have your damages been?  A. The fact that I've paid money for something that isn't clear that it's flammable.").  Accordingly, the one line from Altamura's deposition on which defendants' counsel focuses does not render her unfit to represent the California class.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

### 1.    Predominance

The predominance inquiry "trains on legal or factual questions that qualify each class member's case as a genuine controversy." Amchem Prods, Inc. v. Windsor, 521 U.S. 591, 625 (1997).  "When one or more of the central issues in the action are common to the class and can be said to predominate," a class action will be considered proper "even though other matters will have to be tried separately." Gartin v. S&M NuTec LLC, 245 F.R.D. 429, 435 (C.D. Cal. 2007).  "Because no precise test can determine whether common issues predominate, the Court must pragmatically assess the entire action and the issues involved." Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 489 (E.D. Cal. 2006).  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." See Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

According to plaintiffs, predominance is "readily met" because each class member purchased Serum and was subject to the same deceptive marketing and advertising.  Mot. at 13.  Plaintiffs assert that no "individual issues exist" because the content of defendants' omissions and representations can be determined on a classwide basis. Id. at 14. Plaintiffs contend that these common legal and factual issues predominate over plaintiffs' UCL, CLRA, Song-Beverly, and GBL claims. Id. at 15–18, 20–21.

Defendants respond that no presumption of reliance is warranted for the class members and, as a result, individual questions predominate.  Opp'n at 18.[11]  According to defendants, "[i]n the case of a product like the Serum, which contains numerous representations, reliance is not uniform across a putative class and class treatment is therefore inappropriate."  Id. (relying on Pfizer Inc. v. Sup. Ct. (Galfano), 182 Cal. App. 4th 622, 632 (Cal. Ct. App. 2010)). Defendants assert that "[u]nlike cases where reliance can be presumed, this case does not involve an affirmative misrepresentation, nor does it

---

[11]Defendants also argue that plaintiffs and certain class members lack Article III standing because they have not suffered any injury. See Opp'n at 16–17.  As discussed supra, Section IV.A, the Court rejects this argument.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

allege that a product failed to perform as advertised." Opp'n at 19. Thus, defendants maintain that "each putative plaintiff will have to show reliance on an omission, resulting in countless individual inquiries." Id.

The Court finds that common issues predominate over individualized issues for largely the same reasons as Rule 23(a)'s commonality requirement is satisfied. See supra, Section IV.B.2. Whether defendants' alleged omissions and misrepresentations violated the UCL, CLRA, Song-Beverly Act, and GBL present common factual and legal issues. Because the predominance requirement is "more demanding" than Rule 23(a)'s commonality requirement, each claim for relief is analyzed in turn. Amchem, 521 U.S. at 624.

### a.     UCL

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The statute is phrased in the "disjunctive," and, as a result, is violated where a defendant's act or practice is unlawful, unfair, or fraudulent. Prata v. Super. Ct., 91 Cal. App. 4th 1128, 1137 (Cal. Ct. App. 2001).

To succeed under the "fraudulent" prong, plaintiffs "need only show that members of the public are likely to be deceived" by the advertising or marketing campaign, which can be demonstrated by the effect the advertisement has on "the reasonable consumer." In re Tobacco II, 36 Cal.4th at 312 (internal quotation marks and citation omitted); Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008). Thus, whether defendants' alleged omissions and misrepresentations with regard to Serum deceived the average "reasonable consumer" can be proved through common evidence.

A business practice is "unfair" if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. People v. Casa Blanca Convalescent Homes, Inc., 159 Cal. App. 3d 509, 530 (Cal. Ct. App. 1984). False advertising—one of plaintiffs' theories in this case—can never be a lawful business practice. Vasquez v. Sup. Ct., 4 Cal.3d 800, 808 (1971). Whether defendants'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

misrepresentations constitute false advertising can therefore be proved through common evidence.[12]

Importantly, relief under any of the UCL's three prongs is available "without individualized proof of deception, reliance and injury," so long as the named plaintiffs demonstrate injury and causation. Mass. Mut. Life Ins. Co. v. Sup. Ct., 97 Cal. App. 4th 1282, 1289 (Cal. Ct. App. 2002); In re Tobacco II, 46 Cal.4th at 326–27. "The UCL and false advertising law are both intended to preserve fair competition and protect consumers from market distortions," meaning that "in the eyes of the law, a buyer forced to pay more than he or she would have is harmed at the moment of purchase." Kwikset, 51 Cal.4th at 331, 334. As discussed above, the named plaintiffs in this case have alleged economic injury traceable to the alleged violation of the UCL sufficient to raise an inference of causation. See supra, Section IV.A.

Accordingly, common issues of fact and law predominate plaintiffs' UCL claim.

**b.      CLRA**

The CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient economical procedures to secure such protection." Cal. Civ. Code § 1760. Relief under the CLRA is available to "any consumer who suffers damage as a result of the use or employment" of any unlawful "method, act, or practice."

---

[12]Finally, "unlawful" business practices within the meaning of the UCL "include anything that can properly be called a business practice and that at the same time is forbidden by law." McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1475 (Cal. Ct. App. 2006) (internal quotation marks and citation omitted); Plascencia v. Lending 1st Mortg., 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008) ("Violation of almost any federal, state, or local law may serve as the basis for a UCL claim."). Accordingly, liability under any of the other claims asserted herein may serve as a predicate for violation of the UCL's unlawfulness prong.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

Cal. Civ. Code § 1780(a).  Such damage may result "through the materiality" of an alleged omission.  See Parkinson v. Hyundai Mot. Am., 258 F.R.D. 580, 595–96 (C.D. Cal. 2008).  Whether an omission is "material[]" presents a "common question of fact suitable for treatment in a class action."  Mass. Mut., 97 Cal. App. 4th at 1294; Stearns, 655 F.3d at 1022 (holding that materiality is established "'if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question'") (quoting Steroid Hormone Prod. Cases, 181 Cal. App. 4th 145, 155–56 (Cal. Ct. App. 2010)).  "[T]he causation required by the [CLRA] does not make plaintiffs' claims unsuitable for class treatment" because "[c]ausation as to each class member is commonly proved more likely than not by materiality."  Mass. Mut., 97 Cal. App. 4th at 1292.

Accordingly, "common issues of law and fact predominate[] in claims brought pursuant to the CLRA for failure to disclose alleged design defects."  Cartwright v. Viking Indus., Inc., 2009 WL 2982887, at *12 (E.D. Cal. Sept. 14, 2009) (citing Mass. Mut., 97 Cal. App. 4th at 1292).  See also Keilholtz v. Lennox Hearth Prods., 268 F.R.D. 330, 342–43 (N.D. Cal. 2010) (concluding that the "ultimate question of whether the undisclosed information" based on the defendants' alleged failure to disclose to consumers that defendants' fireplaces could reach too-hot temperatures was material was "a common question of fact suitable for treatment in a class action").

#### c.    Song-Beverly Act

To establish a violation of the Song-Beverly Act, the plaintiff must prove that goods sold in California were not merchantable.  Cal. Civ. Code §§ 1792 et seq.  Here, plaintiffs' Song-Beverly Act claim is based on the allegation that defendants represented Serum as safe to use as a "leave-in" product without any risk of injury threatened by the use of heated appliances.  Whether that representation was false presents a common question appropriate for class resolution.  See Sanbrook v. Office Depot, Inc., 2009 WL 840020, at *5 (N.D. Cal. Mar. 30, 2009) (concluding that "[t]he Song-Beverly class claim is significantly subject to common proof.  The nature of the Song-Beverly violation is common to all class members . . . .").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|----------|-------------------------------------------------------------|------|-------------|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

     **d.**    **GBL**

       Finally, in order to recover for a violation of New York's GBL § 349, for deceptive business practices, or § 350, for false advertising, a plaintiff must show: "(1) that the act, practice, or advertisement was consumer-oriented; (2) that the act, practice, or advertisement was misleading in a material respect; and (3) that the plaintiff was thereby injured." Ackerman v. Coca-Cola Co., 2010 WL 2925955, at *22 (E.D.N.Y. July 21, 2010). See also City of New York v. Smokes.com, Inc., 911 N.E.2d 834, 839 (N.Y. 2009). As with California's UCL, the "standard for whether an act or practice is misleading is an objective one, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct." Ackerman, 2010 WL 2925955, at *22 (citing Marcus v. AT&T, 138 F.3d 46, 64 (2d Cir. 1998)). A claim for deceptive business practices pursuant to § 349 does not require a demonstration of reliance, although a claim pursuant to § 350 does. However, under New York law, there is a presumption of reliance when the defendant controls the relevant information and a consumer of ordinary intelligence could not discover the true state of affairs. Leider v. Ralfe, 387 F. Supp. 2d 283, 293, 296 (S.D.N.Y. 2005). Moreover, where consumers allege that they paid a premium for the product based on marketing representations—as plaintiffs do here—they have adequately alleged an injury under § 350. Ackerman, 2010 WL 2925955, at *23. Accordingly, as with the California claims, the issue of whether plaintiffs and class members would have purchased Serum had they known it was flammable can be established with common proof.[13]

---

      [13]At oral argument, counsel for defendants argued that Hooper v. HM Mane Solutions, LLC, 819 N.Y.S.2d 848 (N.Y. Sup. Ct. 2006) (unreported disposition), foreclosed plaintiffs' claims under the GBL. Defendants are incorrect. In Hooper, the court declined to certify a class of consumers who brought suit against the maker of "Easy Straight Hair Straightening System" because the hair product allegedly caused damage to plaintiffs' hair or scalp, but failed to warn them of this possibility. Id. at *1. In denying plaintiffs' motion to certify, the court observed that the proposed class "is based on the plaintiffs' argument that the mere purchase or use of Easy Straight is actionable even without any injury." Id. at *2. Here, in contrast to the physical injuries

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|----------|---------------------------------------------------------------|------|-------------|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

For the reasons set forth above, common issues predominate over individualized issues with regard to all of plaintiffs' claims.

## 2.    Whether Class Litigation is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets forth four relevant factors fo determining whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These factors include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Id.

"[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190 (9th Cir.) (internal quotation marks and citation omitted), amended by 273 F.3d 1266 (9th Cir. 2001).

---

alleged in Hooper, plaintiffs allege that they suffered economic injury. Accordingly, Hooper is distinguishable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|----------|-------------------------------------------------------------|------|-------------|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

Plaintiffs argue that the "superiority" factors "weigh heavily" in favor of class certification in this case because "it is not economically feasible" for the thousands of putative class members to pursue individual claims.  Mot. at 22.  Further, plaintiffs assert that liability will turn on whether defendants' advertisements and packaging were false and misleading, "meaning judicial efficiency" also weighs in favor of class certification. Id.  Finally, plaintiffs contend that "the adjudication of class claims would be significantly less burdensome than if the matter were prosecuted individually."  Id. at 23.

Defendants respond that "mass torts are ill suited for class treatment."  Opp'n at 23 (citing McManus v. Fleetwood Enters., Inc., 320 F.3d 545, 549–50 (5th Cir. 2003)). Further, defendants argue that proceeding on a classwide basis would force the Court to "evaluate the state of mind of each putative plaintiff to determine whether they placed importance on flammability and warning labels," and that "[e]ven if liability is established, determining each putative plaintiff's recovery would be a herculean task." Opp'n at 25 (citing Simer v. Rios, 661 F.2d 655, 669 (7th Cir. 1981)).

The Court finds that class litigation is superior to other methods of adjudication in this case.  First, class actions "to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'"  Ballard v. Equifax Check Servs., Inc., 186 F.R.D. 589, 600 (E.D. Cal. 1999) (quoting Duran v. Credit Bureau of Yuma, Inc., 93 F.R.D. 607, 610 (D. Ariz. 1982)).  Second, given that Serum sells for less than $10.00 per bottle, "there is no realistic alternative to a class action in this case, making a class action understandably the superior method of adjudication."  Dannon, 255 F.R.D. at 672. Finally, adjudicating class claims will be significantly less burdensome than if the matter were prosecuted individually.  E.g. Menagerie Prods. v. Citysearch, 2009 WL 3770668, at *19 (C.D. Cal. Nov. 9, 2009) (concluding that "it does not appear that any members of the class have commenced any other litigation concerning the controversy alleged herein" and "concentrating the litigation in this Court will allow it to proceed in an efficient manner without risking inconsistent outcomes, and there is no reason to think that this is an undesirable forum to litigate these claims").

Accordingly, the Court finds that the superiority requirement of Rule 23(b)(3) is satisfied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|----------|----------|------|-------------|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

### D.     Appointment of Class Counsel

Rule 23(g)(1) requires the Court to appoint class counsel.  Rule 23(g) provides, inter alia, that courts must consider the following factors in appointing class counsel:

(i)     the work counsel has done in identifying or investigating potential claims in the action;

(ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)     counsel's knowledge of the applicable law; and

(iv)     the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)

The Court is satisfied that plaintiffs' co-counsel of record, KamberLaw, LLP and Parisi & Havens LLP meet the criteria of Rule 23(g) and should serve as co-class counsel.  First, both firms have represented plaintiffs throughout this litigation.  Second, both firms have significant experience in litigating class actions and otherwise satisfy the requirements of Rule 23(g).  See Parasmo Decl. ¶¶ 18, 19.  Finally, both firms have sufficient resources to vigorously represent the classes.  See id., ¶¶ 17, 19.

KamberLaw, LLP and Parisi & Havens LLP are hereby appointed class counsel pursuant to Rule 23(g).

## V.     CONCLUSION

In accordance with the foregoing, plaintiffs' motion for class certification is GRANTED.  The following two classes are hereby certified:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-1067 CAS (JCx)  Consolidated with CV 11-5465 CAS (JCx) | Date | May 7, 2012 |
|---|---|---|---|
| Title | JILL GUIDO; ET AL. v. L'OREAL, USA, INC.; ET AL. Consolidated with CATHERINE ALTAMURA; ET AL. v. L'OREAL, USA, INC.; ET AL. | | |

California Class: For the California claims, this class is comprised of all California residents who purchased Garnier Fructis Sleek & Shine Anti-Frizz Serum in the state of California during the period from February 2, 2008, to the present.

New York Class: For the New York claims, this class is comprised of all New York residents who purchased Garnier Fructis Sleek & Shine Anti-Frizz Serum in the state of New York during the period from February 4, 2008, to the present.

 Excluded from both classes are defendants as well as all employees of the Court, including, but not limited to, judges, magistrate judges, clerks, and court staff and personnel of the United States District Courts of the Central District of California, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court; their spouses or significant others and any minor children living in their households and any other persons within a third degree of relationship to any such federal judge; and finally, the entire jury venire called to for jury service in relation to this lawsuit.  Also excluded from the classes are any attorneys or other or other employees of any law firms hired, retained, and/or appointed by or on behalf of the named plaintiffs to represent the named plaintiffs and any/or proposed class members or proposed class in this lawsuit.  Also excluded from the classes are any persons who have sustained physical injury as  result of the defects at issue in this litigation.

IT IS SO ORDERED.

|  | 00 | : | 21 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |