FILED

2012 NOV 16  PM 4:00

CENTRAL DIST OF COURT
LOS ANGELES

BY:_____

1  David C. Parisi (SBN 162248)
   dcparisi@parisihavens.com
2  Suzanne Havens Beckman (SBN 188814)
   shavens@parisihavens.com
3  Parisi & Havens LLP
   15233 Valleyheart Drive
4  Sherman Oaks, California 91403
   Telephone: (818) 990-1299
5  Facsimile: (818) 501-7852

6  Additional counsel listed on signature page

7

8  ## IN THE UNITED STATES DISTRICT COURT
   ## FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

10  Catherine Atherton, on behalf of
    themselves and all others similarly
11  situated,

12          Plaintiffs,

13  v.

14  L'OREAL, USA, INC., et al.,

15          Defendants.

| | |
|---|---|
| CASE NO. 11-cv-05465 CAS (JCX) consolidated with CASE 11-CV-01067 CAS (JCX) | |

JURY DEMAND

**FIRST CONSOLIDATED, AMENDED CLASS ACTION COMPLAINT**

For Violations of:

1. **Song-Beverly Consumer Warranty Act, §1792 & 1791(1)(a)**
2. **Song-Beverly Consumer Warranty Act, §1792 & 1791(1)(b)**
3. **Cal. Bus. & Profs. Code §17200**
4. **Cal. Civil Code §1750**
5. **Cal. Civil Code §17500**
6. **N.Y. G.B.L. §349**
7. **N.Y. G.B.L. §350**

22

23     On behalf of themselves and all others similarly situated, Plaintiffs,

24  JULIANE HAYES, BRITTANY BAISLEY, and STEPHANIE GERMANN, sue

25  Defendants, L'OREAL, USA, INC., and L'OREAL USA PRODUCTS, INC., and

26  in support thereof, state:

27

28

First Consolidated Amended Class Action Complaint        Case Nos. 11-01067/11-cv-05465 (CAS) (JCx)

**JURY TRIAL DEMAND**

Plaintiffs hereby demand trial by jury of all issues so triable.

Dated: November 16, 2012                           Respectfully submitted,


By: _____
David C. Parisi
Suzanne Havens Beckman

**PARISI AND HAVENS LLP**

David C. Parisi (SBN 162248)
Suzanne Havens Beckman (SBN 188814)
15233 Valleyheart Drive
Sherman Oaks, CA 91403-1545
Telephone: 818-990-1299
Facsimile: 818-501-7852
Email: dcparisi@parisihavens.com
Email: shavens@parisihavens.com

Grace E. Tersigni (admitted *pro hac vice*)
gtersigni@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:   (212) 920-3072
Facsimile:   (212) 920-3081
Email: gtersigni@kamberlaw.com


Jeremy R. Wilson (admitted *pro hac vice*)
Wilson Trosclair & Lovins, PLLC
302 North Market Street, Suite 510
Dallas, TX 75202
Telephone: (214) 484-1930
Facsimile: (214) 276-1475
jeremy@wilsontrosclair.com

**Counsel for Plaintiffs**

**DECLARATION OF DAVID C. PARISI**

I, David C. Parisi, hereby declare on oath as follows:

1.    I am an attorney licensed to practice law in the state of California. I am over the age of 18 years and I have personal knowledge of the matters attested to herein. If called upon to testify, I would and could competently do so.

1.    I make this declaration pursuant to California Civil Code section 1780(c) on behalf of my client, Plaintiff JULIANNE HAYES, on behalf of herself and all others similarly situated.

2.    Defendant L'Oreal USA, Inc. is a Delaware corporation with its principal place of business at 575 5th Avenue, New York. L'Oreal USA, Inc. does business in New York and throughout the United States.

3.    Defendant, L'Oreal USA Products, Inc. is a Delaware corporation with its principal place of business at 575 5th Avenue, New York. L'Oreal USA Products, Inc. does business in California and throughout the United States.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated this 16th day of November 2012 at Los Angeles, California.

By: _____

David C. Parisi
One of the Attorneys for Plaintiffs

First Consolidated Amended Class Action Complaint    Case Nos. 11-01067/11-cv-05465 (CAS) (JCx)

# I.   NATURE OF THE CASE

1.    This lawsuit arises out of L'Oreal's manufacture, distribution, and marketing of a "leave-in" hair-care product, Garnier Sleek & Shine Anti-Frizz Serum ("Serum"). Plaintiffs and members of the proposed Classes purchased Serum believing it was safe for all ordinary hair styling purposes and for the particular purpose of application to hair before using a blowdryer and/or as a "leave-in" styling product.

2.    L'Oreal fails to disclose the material fact that Serum poses an extreme and unreasonable danger to consumers when applied to their hair.  Serum is unreasonably dangerous to consumers because it dramatically increases the flammability of hair and poses a serious risk of a rapidly spreading hair fires. The product packaging of Serum contains no warning label, nor does it state that the safety of the product has not been determined.

3.    By manufacturing, distributing, and marketing Serum without a warning label, L'Oreal breached its implied warranties to consumers, violating state consumer protection and unfair competition laws. Plaintiffs bring this class action for equitable, injunctive, declaratory, and monetary relief as set forth below.

# II.   PARTIES

4.    Plaintiff, JULIANE HAYES, is a resident of Los Angeles County, California.  She purchased Serum at a retail store in California during the period of February 2, 2008 through the present (the "Complaint Period").  Serum packaging did not contain a warning label.

5.    Plaintiff, BRITTANY BAISLEY, is a resident of Dutchess County, New York. She purchased Serum at a retail store in New York during the Complaint Period.  Serum packaging did not contain a warning label.

6.     Plaintiff, STEPHANIE GERMANN, is a resident of Kings County, New York. She purchased Serum at a retail store in New York during the Complaint Period.  Serum packaging did not contain a warning label.

7.     Defendant L'OREAL USA, INC. is incorporated in Delaware and headquartered at 575 5th Avenue, New York. L'Oreal USA, Inc. does business in California and throughout the United States.

8.     Defendant L'OREAL USA PRODUCTS, INC. is incorporated in Delaware and headquartered at 575 5th Avenue, New York. L'Oreal USA Products, Inc. does business in California and throughout the United States.

9.     In recent years, Defendant L'Oreal USA, Inc. and L'Oreal USA Products, Inc. (collectively, "Defendants" or "L'Oreal") have averaged $2.1 billion in sales in North America for the consumer's cosmetics and beauty products division, including sales of the Garnier line of products.

### III.   JURISDICTION AND VENUE

10.     This Court has subject-matter jurisdiction over this action pursuant to Title 28, United States Code, section 1332, as amended by the Class Action Fairness Act of 2005, in that the aggregate claims of Plaintiffs and the proposed Class Members (as defined herein) exceed the sum or value of $5,000,000, exclusive of interest and costs.

11.     There is minimal diversity of citizenship between the proposed Class Members and Defendants in that (a) L'Oreal USA, Inc. and L'Oreal USA Products, Inc. each do business and are headquartered in New York; and (b) Plaintiffs are citizens and residents of the states of New York and California asserting claims on behalf of proposed classes whose members reside in those states.

12.     Venue is proper in this District pursuant to Title 28, United States Code, section 1391, in that Defendants conduct business with consumers in this

1  District and a substantial portion of the events and conduct giving rise to the vio-

2  lations of law set forth herein took place in this District.

3         13.    This Court has personal jurisdiction over Defendants because:  (a) a

4  substantial portion of the wrongdoing alleged in this Complaint took place in this

5  state; and (c) Defendants are authorized to do business in and have sufficient min-

6  imum contacts with this state and/or have otherwise intentionally availed them-

7  selves of the markets in this state through the promotion, marketing, and sale of

8  their products and/or services in this state to render the exercise of jurisdiction by

9  this Court permissible under traditional notions of fair play and substantial jus-

10  tice. Specifically, Defendants manufacture, market and distribute such brands as

11  Maybeline New York, Ralph Lauren, Redken, Lancome, Vichy, and L'Oreal Par-

12  is.  Defendants' websites advertise their products throughout the United States,

13  Europe, and most of the world.  Defendants' products are ultimately sold to mil-

14  lions of California residents, including residents in the Central District of Califor-

15  nia.

16         14.    Venue is appropriate in this District because Defendant has sold its

17  goods within the Central District of California.

18                 **IV.   STATEMENT OF FACTS**

19         15.    Garnier Fructis Anti-Frizz Sleek & Shine Serum is a consumer hair

20  styling product designed to counteract the effects of "frizzy, dry, unmanageable"

21  hair.

22         16.    L'Oreal manufactures and distributes Serum and promotes it specifi-

23  cally for the consumer market.

24         17.    During the Complaint Period, as defined herein, Serum was widely

25  distributed and sold in drug stores, mass retail outlets, and supermarkets and

26  through online retailers to consumers throughout the States of California and New

27  York and the United States.

28

First Consolidated Amended Class Action Complaint        Case Nos. 11-01067 /11-cv-05465 (CAS) (JCx)

18.     In consumer-targeted statements made by L'Oreal during the Complaint Period, L'Oreal promoted Serum as a "leave-in" hair-styling product that the consumer could liberally apply to hair before using a blowdryer.

19.     On the Garnier website and on Serum product packaging, L'Oreal instructs the consumer to use "as much as needed for your hair type," "do not rinse," and "[f]or the sleekest look, style using brush and blowdryer.[1]"

20.     Plaintiffs and members of the proposed Classes purchased Serum believing it was defect-free and safe for all ordinary hair styling purposes and for the particular purpose of application to hair before using a blowdryer.

21.     Plaintiffs and members of the proposed Class purchased Serum believing that it was safe to leave in their hair all day.

22.     The statements identified in paragraphs 18 through 19 constitute express representations relied upon by Plaintiffs and the Class.

**A.     L'Oreal Fails To Place A Caution Label on Serum Packaging.**

23.     L'Oreal failed to disclose that Serum significantly increases the risk of hair fires.  When the product is applied to hair and exposed to high heat or ignition sources, the product may instantly ignite and a hair fire will spread rapidly. Given the high surface-to-volume ratio of the hair plus Serum residue, no preheating of the product is needed to ignite the hair and the hair product mixture.

24.     In addition, the directions for Serum recommend the use of a blowdryer, which has the potential to be an electrical ignition source.  Exposure to common household items, such as a spark from a blowdryer, a flame from a

---

[1]     *See* Garnier website, "Garnier Fructis SLEEK & SHINE ANTI-FRIZZ SERUM (LEAVE-IN)," Product Information, available at http://www.garnierusa.com/_en/_us/our_products/product-struct.aspx?tpcode=OUR_PRODUCTS^PRD_HAIRCARE^FRUCTIS^FRUCTIS_DISCOVER^FRUCTIS_SLEEK_SHINE^FRUCTIS_SLEEK_SHINE_RTN3 &prdcode=P41029 (last visited November 11, 2012).

1    candle, a lighted cigarette, or other ignition sources can cause the consumer's hair

2    to almost instantaneously engulf in flames.

3           25.    There are no warnings whatsoever on the product packaging or the

4    Defendants' website about any increased hair fire risk and there is no statement

5    that the user of the product should avoid heat, flames, and sources of ignition dur-

6    ing and after application to hair.

7           26.    Considering the ease at which Serum ignites and the speed with

8    which flames spread on hair, Serum poses an unreasonable risk of injury from

9    burns to the face, head, and neck under conditions of customary use and reasona-

10   bly foreseeable conditions of misuse.

11          27.    L'Oreal knew or should have know that Serum poses an extreme, se-

12   rious, and unreasonable danger to consumers who use it according to its direc-

13   tions: by applying liberal amounts of Serum to their hair, using Serum as a

14   "leave-in" hair styling product, and/or styling with a blowdryer.

15          28.    L'Oreal knew or should have known that Serum poses an increased

16   risk of hair fires and that consumers should avoid fire, flames, smoking, and heat

17   during and after application of the product to their hair.

18          29.    When Serum was initially launched in 2004, the product packaging

19   contained an inadequate warning that stated: "Avoid Fire, Flame, Smoking and

20   Heat (Except For Styling Appliances) During Application and Until Hair Is Com-

21   pletely Dry." Prior to the Complaint Period, L'Oreal removed this warning label

22   from the product packaging of Serum.

23          30.    During the Complaint Period, on the L'Oreal website, Defendants

24   claimed that they conduct "rigorous safety evaluations of ingredients as well as

25   finished products, examination of the effects of cumulative product use and ongo-

26   ing safety monitoring once a product is on the market." The website further states

27   that "[w]hether governed by the European Cosmetic Directive, the US Food and

28

Drug and Cosmetic Act or any other local laws that regulate the sale of cosmetic products, L'Oréal meets or exceeds the legal obligation for product safety in each country where our products can be purchased."

31.    Given this testing and research performed by L'Oreal on its products and purported conformity to state, federal, local and international regulations, Defendants knew or should have known that Serum is dangerous to consumers under conditions of customary use and reasonably foreseeable conditions of misuse.

32.    Defendants knew or should have known that consumers who purchased Serum would apply Serum to their hair and then accidently come into contact with flames, sparks, and other sources of ignition, including blowdryers, which could instantly ignite Serum on their hair.

33.    By selling Serum as labeled, L'Oreal represented to Plaintiffs and Class Members that it was safe, of mercantile quality, fit for its intended and reasonable uses and foreseeable misuses, and accompanied by sufficient protections and warnings regarding the potential dangers and hazards that reasonable consumers would expect and assume to be provided for them to decide whether to purchase Serum.

34.    Defendants' marketing and labeling of Serum affirmatively and impliedly presented the product as being suitable for ordinary uses and for particular purposes, including use as a "leave-in" hair styling product. However, the product was not suitable for such use and is not suitable for use with a blowdryer.

35.    Despite L'Oreal's knowledge of the dangerous quality of the product and the likelihood that consumers would be exposed to household items that would suddenly ignite the product in their hair, L'Oreal failed to warn consumers that its product was defective and/or posed a substantial and unreasonable risk of burns to the face, head, and neck.

36.   L'Oreal materially misrepresented the safety of Serum and/or omitted material information from its representations.

37.   Plaintiffs and Class Members relied upon L'Oreal's representations with respect to the safety of the product, as well as the lack of safety warnings, in making their purchasing decisions.

38.   Plaintiffs and Class Members would not have purchased Serum if L'Oreal had disclosed the fact that Serum was dangerous and unsuitable for use as directed, i.e., as a "leave-in" hair styling product and/or with blowdryers.

39.   Because L'Oreal did not properly label Serum, Plaintiffs were misled into purchasing a product that did not meet their expectations and which was extremely dangerous for them to use.  Upon learning about the dangerous nature of and serious hazards posed by using Serum, Plaintiffs ceased using the product.

40.   Given the undisclosed dangers imposed by using Serum, Serum was not useful to Plaintiffs and was not as valuable to them as the price for which they paid for it.

41.   A reasonable consumer would, and Plaintiffs and Class Members did, in fact, expect that if Serum created a fire hazard, the packaging of Serum would contain a warning.

42.   The prevalence of caution labels on products in the marketplace create consumer expectations that they will be warned of a products' propensity to ignite into flames on their body through ordinary uses and foreseeable misuses of the product.  In the absence of such a warning, Plaintiffs and Class Members reasonably concluded that the materials used in Serum were safe to use as directed on the product packaging and on Defendants' websites.

43.   Plaintiffs and Class Members' expectations were reasonable for an additional reason: The Food, Drug, and Cosmetic Act regulates labeling of cosmetics. A company's failure to reveal material facts is one form of misleading la-

beling and therefore makes a product misbranded.  21 CFR 1.21. An example is directions for safe use, if a product could be unsafe if used incorrectly.  In addition, FDA regulations require that cosmetics that may be hazardous to consumers bear prominent and conspicuous label warnings. 21 CFR 740.1. *See* http://www.fda.gov/Cosmetics/CosmeticLabelingLabelClaims/default.htm.

44.    In fact, as discussed above in paragraph 29, L'Oreal's website affirmatively represents that it complies with federal cosmetic labeling laws.

45.    During the Complaint Period, a personal injury lawsuit was filed against L'Oreal by a minor who suffered serious physical injury when the product burst into flames allegedly as a result of the minor's use of a hot straightening comb after she applied Serum to her hair. Thus, L'Oreal has actual notice of the unsafe and defective nature of the product and has had an opportunity to cure the defect.

**B.    Consumer Consequences**

46.    To date, L'Oreal has not recalled the product nor has it offered to reimburse consumers for purchasing the product.

47.    As a consequence of Defendants' failure to place a warning label on Serum, Plaintiffs and Class Members have an extremely dangerous product that is unsuitable for its intended and foreseeable use as a "leave-in" hairstyling product and/or with blowdryers.

48.    Plaintiffs purchased a product that has a diminished value and usefulness. Plaintiffs ceased using the product once they learned of its dangerous qualities.

49.    Plaintiffs and Class Members overpaid for Serum because they reasonably believed that it was a safe product.

50.    Plaintiffs and Class Members suffered actual damages as a result of Defendants' acts and omissions. Specifically, as a proximate result of Defend-

ants' conduct, Plaintiffs and other Class Members suffered monetary losses, i.e., the purchase price of Serum.

51.     Plaintiffs and Class Members who purchased Serum are entitled to a refund of the purchase price.

52.     Plaintiffs and the Classes also seek a court order requiring the Defendants to issue a recall of the product and to re-label the product with adequate warning labels.

## V.   CLASS ACTION ALLEGATIONS

53.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure, Rules 23(b)(2) and (b)(3), on behalf of themselves and the following classes of purchasers (each a "Class Member" of the "Classes"):

       a.     *The "California Class"*: All individuals who purchased Garnier Fructis Sleek & Shine Anti-Frizz Serum in the state of California at any time during the period of February 2, 2008 to the present.

       b.     *The "New York Class"*: All individuals who purchased Garnier Fructis Sleek & Shine Anti-Frizz Serum in the state of New York at any time during the period of February 4, 2008 to the present.

54.     Excluded from both classes are defendants as well as all employees of the Court, including, but not limited to, judges, magistrate judges, clerks, and court staff and personnel of the United States District Courts of the Central District of California, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court; their spouses or significant others and any minor children living in their households and any other persons within a third degree of relationship to any such federal judge; and finally, the entire jury venire called to for jury service in relation to this lawsuit. Also excluded from the classes are any attorneys or other employees of any law firms hired, retained, and/or appoint-

ed by or on behalf of the named plaintiffs to represent the named plaintiffs and any/or proposed class members or proposed class in this lawsuit. Also excluded from the classes are any persons who have sustained physical injury as result of the defects at issue in this litigation.

55.    Plaintiffs reserve the right to amend the definitions of the classes if discovery or further investigation reveals that the classes should be expanded or otherwise modified.

56.    **Numerosity/Impracticability of Joinder:** The members of each of the Classes are so numerous that joinder of all members would be impracticable. Plaintiffs reasonably estimate that each of the proposed Classes consists of thousands of consumers who purchased Serum.

57.    **Commonality and Predominance:** Common questions of law and fact predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary from one Class Member to another and which may be determined without reference to the individual circumstances of any Class Member, include, but are not limited, to the following:

a.    Whether Serum's packaging are unlawful, unfair, deceptive, or misleading to reasonable consumers under the UCL, CLRA, and GBL;

b.    Whether Serum's marketing materials are unlawful, unfair, deceptive, or misleading to reasonable consumers under the UCL, CLRA, and GBL;

c.    Whether the labels that instructed consumers to use "as much [Serum] as needed for your hair type," "do not rinse," and "[f]or the sleekest look, style using brush and blowdryer" are deceptive to the average reasonable consumer in light of Serum's dangerous qualities, including significantly increasing the risk of a hair fire;

d.     Whether a reasonable consumer would expect that Serum would contain a warning pursuant to the requirement of the Food, Drug, and Cosmetic Act's regulations, 21 C.F.R. 740.1, that hazardous cosmetics contain appropriate labels;

e.     Whether Plaintiffs had a reasonable expectation that Serum was not dangerous around flames or other sources of ignition, such as a hair-blower;

f.     Whether Defendants tested Serum "under conditions of customary use and reasonably foreseeable conditions of misuse" as described by the FDA's labeling guidelines;

g.     Whether Defendants had a duty to disclose the dangerous qualities of Serum and/or place a warning on the product packaging to inform consumers to avoid heat, flames, and other sources of ignition;

h.     Whether it was foreseeable to Defendants that consumers would use Serum near flames and sources of ignition, such as hair blowers;

i.     Whether Defendants concealed material information regarding the dangerous qualities of Serum from Plaintiffs;

j.     Whether use of Serum as directed by the labeling on the package creates an unreasonable risk of hair fires;

k.     What the true market value of Serum is when properly labeled as Plaintiffs contend in this action;

l.     Whether, as a result of Defendants' conduct, Plaintiffs and the Classes are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

58.     **Typicality:** Plaintiffs' claims are typical of the claims of the Classes because Plaintiffs and all Class Members were injured by the same wrongful practices in which Defendants engaged. Plaintiffs' claims arise from the same

practices and course of conduct that give rise to the claims of the Classes and are based on the same or similar legal theories.

59.   **Adequacy:** Plaintiffs will fully and adequately protect the interests of the members of the Classes and have retained class counsel who are experienced and qualified in prosecuting class actions, including consumer class actions and other forms of complex litigation. Neither Plaintiffs nor their counsel have interests contrary to or conflicting with those of the Classes. Defendants have no defenses unique to Plaintiffs.

60.   **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

61.   Plaintiffs do not anticipate any difficulty in the management of this litigation.

62.   Defendants have acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

63.   Without a class action, Defendants will continue a course of action that will result in further damages to Plaintiffs and the Classes and will likely retain the benefits of their wrongdoing.

64.   Based on the foregoing allegations, Plaintiffs' claims for relief include those set forth below.

# VI.   CLAIMS
## <u>ONE</u>
**Violation of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Merchantability, Sections 1792 and 1791.1(a) of the California Civil Code**

**(On Behalf of Plaintiff Hayes and the California Class)**

65.    Plaintiff Hayes repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

66.    Plaintiff Hayes and members of the California Class are "retail buyers" within the meaning of Section 1791(b) of the California Civil Code.

67.    Serum is a "consumer good" within the meaning of Section 1791(a) of the California Civil Code.

68.    L'Oreal is a "manufacturer" of Serum within the meaning of Section 1791(j) of the California Civil Code.

69.    L'Oreal impliedly warranted to Plaintiff Hayes and members of the California Class that Serum was "merchantable" within the meaning of Sections 1791.1(a) and 1792 of the California Civil Code.

70.    L'Oreal breached the implied warranty of merchantability to Plaintiffs and members of the California Class because Serum (i) would not pass without objection in the trade because it was defective and unreasonably dangerous; (ii) was not fit for its ordinary purpose which it is used (i.e, as a "leave-in" hair styling product); (iii) was not adequately contained, packaged and labeled (i.e., it lacked a caution label about the risk of hair fire when used according to the directions on the product packaging) and (iv) did not conform to the promises or affirmations of fact made on the container or label (i.e., that it was impliedly safe to use as a "leave-in" hair styling product and/or with blowdryers).

71.    L'Oreal's failure to warn Plaintiffs and members of the California Class about the defective and unsafe quality of the product was willful.

72.     As a proximate result of L'Oreal's breach of the implied warranty of merchantability, Plaintiff and members of the California Class sustained damages including but not limited to the loss in value of the Serum and the loss in usefulness of the Serum.

73.     Pursuant to Sections 1791.1(d) and 1794 of the California Civil Code, Plaintiff Hayes, on behalf of herself and the California Class are entitled to damages, civil penalties and other legal and equitable relief including, a right of reimbursement, as well as costs, expenses and attorneys' fees.

## TWO

**Violations of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Fitness, Sections 1792.1 and 1791.1(b) of the California Civil Code (On Behalf of Plaintiff Hayes and the California Class)**

74.     Plaintiff Hayes repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

75.     Plaintiff and members of the California Class are "retail buyers" within the meaning of Section 1791(b) of the California Civil Code.

76.     Serum is a "consumer good" within the meaning of Section 1791(a) of the California Civil Code.

77.     L'Oreal is a "manufacturer" of Serum within the meaning of Section 1791(j) of the California Civil Code.

78.     Defendants specifically marketed Serum as a "leave-in" product that could be applied on dry or wet hair. At the time of the sale of the product, Defendants knew or should have known that Plaintiff Hayes and members of the California Class would (i) use the product as a "leave-in" hair styling product and be exposed to sources of ignition, sparks, flames and/or high heat, placing them at

serious and foreseeable risk of burn injuries and damages and (ii) reasonably rely on L'Oreal's skill or judgment to select or furnish suitable goods.

79.    Plaintiffs and other members of the California Class did in fact purchase Serum with the particular purpose of using it as a "leave-in" hair styling product and before and after using a blowdryer.

80.    Plaintiffs and other members of the California Class did in fact reasonably rely on L'Oreal's skill or judgment to furnish suitable goods.

81.    By manufacturing, marketing, importing, and distributing such a product without a proper warning, L'Oreal breached its implied warranty of fitness for a particular purpose and is liable to Plaintiff Hayes and the California Class.

82.    L'Oreal's failure to warn Plaintiffs and members of the California Class about the defective and unsafe quality of the product was willful.

83.    As a proximate result of L'Oreal's breach of the implied warranty of fitness, Plaintiff and members of the California Class sustained damages, including but not limited to the loss in value of the Serum and the loss in usefulness of the Serum.

84.    Pursuant to Sections 1791.1(d) and 1794 of the California Civil Code, Plaintiff Hayes, on behalf of herself and the California Class are entitled to damages, civil penalties and other legal and equitable relief including, a right of reimbursement, as well as costs, expenses and attorneys' fees.

### THREE
**Violations of California Business & Professions Code, Section 17200,**
***et seq.,***
**Unlawful, Unfair and Fraudulent Business Acts and Practices**
**(On Behalf of Plaintiff Hayes and the California Class)**

85.    Plaintiff Hayes repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

86.   L'Oreal's acts and practices as detailed herein constitute acts of unfair competition. L'Oreal has engaged in unlawful, unfair or fraudulent business acts and/or practices within the meaning of California Business & Professions Code, section 17200, et seq. L'Oreal need only violate one of the three prongs to be held strictly liable.

87.   L'Oreal has engaged in "unlawful" business acts and practices by designing, manufacturing, licensing, promoting, and/or distributing Serum and presenting it as a safe, quality "leave-in" hair product when, in fact, Serum increases the risk of hair fires and is extremely and unreasonably dangerous, particularly when used near household items that are sources of ignition, sparks, flames or high heat.

88.   L'Oreal's business acts and practices violated various federal Food, Drug and Cosmetic Act regulations, including, inter alia: (i) 21 CFR 740.1, which provides that cosmetics that may be hazardous to consumers must bear appropriate label warnings; and (ii) 21 CFR 1.21, which provides that a company's failure to reveal material facts is one form of misleading labeling and therefore makes a product misbranded.

89.   L'Oreal's business acts and practices also violated various state laws, including, inter alia, the California Business and Professions Code, section 17500, et seq., the California Consumer Legal Remedies Act, California Civil Code, Section 1750, et seq., and the Song-Beverly Consumer Warranty Act, Section 1792 and Section 1791(1), subsection (a) and (b).

90.   Plaintiffs reserve the right to identify additional provisions of the law violated by L'Oreal as further investigation and discovery warrants.

91.   L'Oreal's failure to comply with the above statutes and regulations constitutes an unlawful business act or practice.

92.     Section 17200 of the California Business & Professional Code also prohibits any "unfair business act or practice."

93.     As described above, L'Oreal has engaged in "unfair" business acts or practices in that it failed to warn Plaintiff Hayes and the California Class that Serum was defective, unsafe to use as a "leave-in" hair styling product and posed a serious risk of physical injury to the neck, head and face.

94.     The utility of L'Oreal's conduct is not outweighed by the gravity of the harm to Plaintiff Hayes and the California Class.

95.     Plaintiff Hayes' and California Class' injury is substantial, is not outweighed by any countervailing benefit to consumers or competition, and is not one that consumers could have reasonably avoided.

96.     The unfairness of L'Oreal's actions outweighs any business justification, motive or reason therefore, particularly considering the legal alternatives that exist in the marketplace, such as placing an adequate warning label on the product similar to the practices of its various competitors.

97.     Defendants' conduct offends California public policy tethered to the False Advertising Law, which is intended to preserve fair competition and protect consumers from market distortions such as deceptive misrepresentation in labeling.

98.     L'Oreal's actions are immoral, unethical, unscrupulous, and offend established public policy, and have injured Plaintiff Hayes and other members of the California Class.

99.     Section 17200 also prohibits any "fraudulent business act or practice."

100.    L'Oreal's conduct constituted "fraudulent" business acts or practices in that its conduct had a tendency and likelihood to deceive persons to whom such conduct was and is targeted by designing, manufacturing, licensing, marketing

1   and distributing Serum as a safe and quality "leave-in" hair styling product when

2   in fact Serum was not suitable for ordinary uses and posed a serious risk or bodily

3   harm from hair fires.

4       101.   L'Oreal had a duty to disclose the defective and unsafe nature of the

5   product because, at the time that Plaintiff Hayes and members of the California

6   Class purchased the product, it (i) knew or should have known that Serum dra-

7   matically increases the flammability of hair, is readily ignited by sparks, flames,

8   heat, and sources of ignition from common household items, and is therefore ex-

9   tremely and unreasonably dangerous and unfit for ordinary uses; (ii) had exclu-

10  sive knowledge of these material facts, which information was not known to

11  Plaintiffs; and (iii) made a partial representation as to the products' suitability for

12  use as a "leave-in" hair styling product and/or use with blowdryers, a potential

13  source of ignition, but failed to disclose the material facts that consumers should

14  avoid flames, high heat, sources of ignition and sparks.

15      102.   Plaintiff Hayes and members of the California Class were deceived

16  by L'Oreal's representations.

17      103.   Plaintiff Hayes and members of the California Class reasonably re-

18  lied on Defendants' representations, including, inter alia, its directions for use of

19  the product (as a "leave-in" product to be applied generously on wet or dry hair)

20  and the absence of a warning about exposure to heat, sources of ignition and

21  flames.

22      104.   Plaintiff Hayes and members of the California Class have suffered

23  injuries as a direct and proximate result of the unlawful, unfair, and fraudulent

24  business practices of Defendants.

25      105.   Plaintiff Hayes and members of the Class would not have purchased

26  Serum had they known of the defective and unsafe nature of the product.

27

28

First Consolidated Amended Class Action Complaint          Case Nos. 11-01067 /11-cv-05465 (CAS) (JCx)

106.   Section 17200 of the California Business & Professions Code also prohibits any "unfair, untrue or misleading advertising." For the reasons discussed below, Defendants have engaged in unfair, deceptive and misleading advertising in violation of Section 17200.

107.   Pursuant to section 17203 of the California Business and Professions Code, Plaintiff Hayes, on her own behalf and on behalf of the California Class seeks restitution and a Court order enjoining Defendants from such future conduct and any other such orders that may be necessary to rectify the unlawful, unfair, and fraudulent business practices of Defendants, including requiring L'Oreal to recall the product and to provide a warning label on the product packaging.

## FOUR
### Violations of the Consumers Legal Remedies Act,
### California Civil Code Section 1750, *et seq.,*
### (On Behalf of Plaintiff Hayes and the California Class)

108.   Plaintiff Hayes repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

109.   The California Consumer Legal Remedies Act, Section 1750 of the California Civil Code protects consumers against fraud, unlawful practices, and unconscionable commercial practices in connection with sale of any merchandise.

110.   Plaintiff Hayes and members of the California Class are "consumers" as defined by Section 1761(d) of California Code because they sought or acquired Defendants' goods for personal, family, or household purposes.

111.   Serum is a "good" within the meaning of the Section 1761(a) of the California Civil Code.

112.   L'Oreal manufactured, licensed, distributed and falsely marketed Serum as a quality "leave-in" hair styling product that is safe to use when in fact it dramatically increases the flammability of hair, is readily ignited by sparks, flames, heat, and sources of ignition from common household items, and is there-

1    fore extremely and unreasonably dangerous and unfit for ordinary uses. Such
2    conduct constitutes violation of the California Consumer Legal Remedies Act.

3        113.   Defendants violated and continue to violate the Consumer Legal
4    Remedies Act by engaging in the following practices proscribed by section
5    1770(a), subsections (5), (7), (9), and (16) of the California Civil Code in transac-
6    tions with Plaintiff Hayes and members of the California Class, which were in-
7    tended to result in, and did result in, the sale of the Serum, in that Defendants:
8    represented that Serum had characteristics, uses, and benefits which it did not
9    have; represented that Serum was of a particular standard, quality, and grade
10   when it was of another; advertised Serum with the intent not to sell it as adver-
11   tised; and represented that Serum had been supplied in accordance with previous
12   representations when it had not.

13       114.   Plaintiff Hayes and other members of the California Class reasona-
14   bly relied upon and were deceived by Defendants' representations that the Serum
15   was safe, defect-free and fit for ordinary uses.

16       115.   As a proximate and direct result of Defendants' misrepresentations
17   and unlawful and unconscionable commercial practices, Plaintiff Hayes and
18   members of the California Class have been injured and suffered damages in that
19   they have purchased products that are defective and unsafe to use.

20       116.   Pursuant to section 1782(d) of the California Civil Code, Plaintiff
21   Hayes, on behalf of herself and the California Class seek a Court order enjoining
22   Defendants from such future conduct and any other such orders that may be nec-
23   essary to rectify the fraudulent, unlawful, unconscionable commercial practices,
24   and fraudulent business practices of Defendants, including requiring Defendants
25   to recall the product and to provide a warning label on the product packaging.

26       117.   On February 4, 2011, former Plaintiffs Lisa Pearly and Catherine
27   Altamura served a written demand on Defendants, on behalf of themselves and

28

the members of the Classes, pursuant to Civil Code, Section 1782(a). Thirty days have elapsed since Ms. Pearly and Ms. Altamura issued such demand to Defendants. Defendants have failed to make an appropriate correction, repair, replacement or other remedy within 30 days of the demand or within a reasonable time.[2] Plaintiffs are therefore entitled to maintain an action for damages under Sections 1780 and 1781. Plaintiffs request actual damages, restitution of property, punitive damages, injunctive relief and other relief that the Court deems proper, and reasonable attorneys' fees and costs, as permitted by Civil Code, Sections 1780 and 1782.

## **FIVE**
**Violations of the False Advertising Act,**
**California Civil Code Section 17500, *et seq.*,**
**(On Behalf of Plaintiff Hayes and the California Class)**

118.   Plaintiff Hayes repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

119.   Section 17500 of the California False Advertising Act prohibits the dissemination of statements that are untrue, misleading, and which are known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

120.   Defendants' acts and practices violated Section 17500 of the California False Advertising Act.

121.   Defendants disseminated untrue and misleading statements to Plaintiffs and members of the California Class about the quality and safety of Serum.

---

[2]    Although Plaintiffs Lisa Pearly and Catherine Altamura's written demand was served on Defendants on behalf of themselves and all others similarly situated, Plaintiffs Juliane Hayes, Brittany Baisley, and Stephanie Germann, will serve a written demand on Defendants contemporaneously with the filing of this complaint.

122.   Defendants' advertisements, particularly the Garnier and L'Oreal websites and the Serum's labeling, were untrue and misleading in material respects because they failed to disclose and warn consumers against the serious risk of hair fires posed by using Serum when used as a "leave-in" hair styling product as directed on the product packaging, and that the product is unsuitable for ordinary use.

123.   Defendants' failure to include an adequate warning on the product and their websites failure to include an adequate warning had the capacity, likelihood and tendency to deceive and confuse consumers into believing that Serum is in fact safe to use as a "leave-in" hairstyling product.

124.   Defendants' statements on their various websites were untrue and misleading as they represented that Defendants' products, such as Serum, underwent extensive testing to assure the safety and quality of such products for use by consumers.

125.   Defendants, as the manufacturers of Serum, knew or should have known with the exercise of reasonable care that their statements about the safety and quality of the product were untrue and misleading.

126.   Plaintiff Hayes and members of the California Class were induced to purchase Serum based on Defendants' untrue and misleading statements.

127.   Plaintiff Hayes and members of the California Class were aware of and reasonably relied on Defendants' untrue and misleading statements.

128.   Defendants disseminated untrue and misleading statements about Serum's quality and safety with the intent not to sell Serum as advertised.

129.   Pursuant to section 17535 of the California Civil Code, Plaintiff Hayes, on behalf of herself and the California Class seeks restitution and a Court order enjoining Defendants from such future conduct and any other such orders as may be necessary to rectify Defendants' false advertising, including requiring De-

fendants to recall the product and to provide a warning label on the product packaging.

## SIX

### Violations of Section 349 of the New York General Business Law, Deceptive Acts and Practices
### (On Behalf Of Plaintiffs Baisley and Germann and the New York Class)

130. Plaintiffs Baisley and Germann repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

131. Plaintiffs Baisley and Germann and other members of the New York Class are "consumers" as defined in Section 349 of the New York General Business Law.

132. During the Complaint Period, Defendants conducted trade and commerce in New York and elsewhere within the meaning of Section 349 of the New York General Business Law.

133. Defendants' acts and practices as detailed herein constitute deceptive practices under Section 349 of the New York General Business Law.

134. Defendants' misleading and deceptive business practices adversely impacted a class of New York retail purchasers, and therefore, constitute consumer-oriented conduct under Section 349 of the New York General Business Law, and which resulted in a direct harm to the New York purchasers.

135. Defendants disseminated untrue and misleading statements to Plaintiffs and members of the New York Class about the quality and safety of Serum.

136. Defendants' advertisements on its websites and on the product packaging were untrue and misleading in material respects because they failed to warn consumers against the serious risk of bodily harm from hair fires posed by using Serum as a "leave-in" hair product and the unsuitability of the product for the ordinary use of hair styling.

137.   Defendants' statements were untrue and misleading as they represented that Defendants' products, such as Serum, underwent extensive testing to assure the safety and quality of such products for use by consumers.

138.   Defendants' statements had the capacity, likelihood and tendency to deceive and confuse consumers into believing that Serum is in fact safe to use as a "leave-in" styling product.

139.   Defendants, as the manufacturers of Serum, knew or should have known with the exercise of reasonable care that their statements about the safety and quality of the product were untrue and misleading at the time that Plaintiffs and members of the New York Class purchased the product.

140.   Plaintiffs Baisley and Germann and members of the New York Class were aware of and reasonably relied upon statements made by L'Oreal regarding the safety and the quality of the product.

141.   Defendants intended for Plaintiffs Baisley and Germann and members of the New York Class to rely on Defendants' acts of concealment and omissions so that Plaintiffs and other New York Class members would purchase Serum and/or so that Defendants could charge an inflated price for Serum.

142.   Defendants' acts materially misled Plaintiffs Baisley and Germann and members of the New York Class. Had Defendants disclosed to Plaintiffs and the New York Class material information regarding the Serum's dangerous qualities, Plaintiffs and the New York Class members would not have purchased Serum.

143.   The deceptive acts and practices of Defendants have directly, foreseeably, and proximately caused damages and injury to Plaintiffs Baisley and Germann and other members of the New York Class.

144.   As a result of the defective and unsafe nature of Serum, Plaintiffs Baisley and Germann and other members of the New York Class have purchased products that are not fit for ordinary use as "leave-in" hair styling products.

145.   Defendants knowingly and willfully violated Section 349 of the New York General Business Law.

146.   Pursuant to section 349 of the New York General Business Law, Plaintiffs Baisley and Germann seek an order enjoining Defendants from such future conduct and any such order that may be necessary to rectify the misleading and deceptive business practices of Defendants, including requiring L'Oreal to issue a recall of the product and to place an adequate warning label on the packaging of the product.

147.   Pursuant to section 349 of the New York General Business Law, Plaintiffs Baisley and Germann, on their own behalf and on behalf of the New York Class, seeks actual, statutory, and treble damages, costs and expenses, pre and post-judgment interest, and attorneys' fees.

<u>**SEVEN**</u>
**Violations of Section 350 of the New York General Business Law,**
**False Advertising**
**(On Behalf of Plaintiffs Baisley and Germann and the New York Class)**

148.   Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

149.    Defendants' advertisements, particularly the Garnier and L'Oreal websites and the product's labeling, were misleading in material respects because they fail to disclose and warn consumers against the serious risk of harm posed by using Serum as a "leave-in" hair styling product and that the product is unsuitable for ordinary uses.

150.   Plaintiffs Baisley and Germann and the New York Class were misled and/or deceived by the omission of these material facts. Defendants, due to their

1   superior knowledge of the facts herein, were required to disclose these facts to

2   Plaintiffs and the New York Class.

3       151.   The foregoing acts, omissions and practices proximately caused

4   Plaintiffs Baisley and Germann and other members of the New York Class to suf-

5   fer actual injury.

6       152.   Pursuant to section 349 of the New York General Business Law,

7   Plaintiffs Baisley and Germann, on their own behalf and on behalf of the New

8   York Class, seek an order enjoining Defendants from such future conduct and any

9   such order that may be necessary to rectify the misleading and deceptive business

10  practices of Defendants, including requiring L'Oreal to issue a recall of the prod-

11  uct and to place an adequate warning on the product.

12

13                      **PRAYER FOR RELIEF**

14      WHEREFORE, Plaintiffs on behalf of themselves and the Classes,

15  respectfully pray:

16      (a)   For an order certifying this action as a class action, appointing Plain-

17  tiffs as representatives of the Classes, and appointing their attorneys as counsel

18  for the Classes;

19      (b)   For actual, statutory, and treble damages for all applicable claims in

20  amounts to be proven at trial;

21      (c)   For an order permanently enjoining Defendants from engaging in the

22  unlawful practices alleged herein and requiring L'Oreal to issue a recall of the

23  product at issue in this Complaint and to provide an adequate warning label on

24  the product.

25      (d)   For an award of attorneys' fees, costs, and expenses;

26      (e)   For an award of pre and post-judgment interest; and

27      (f)   For such other and further relief as may be just and proper.

28

1

2  Dated: November 16, 2012              Respectfully submitted,

3

4                                       By: _____
                                        David C. Parisi
5                                       Suzanne Havens Beckman

6                                       **PARISI AND HAVENS LLP**

7                                       David C. Parisi (SBN 162248)
8                                       Suzanne Havens Beckman (SBN 188814)
                                        15233 Valleyheart Drive
9                                       Sherman Oaks, CA 91403-1545
                                        Telephone: 818-990-1299
10                                      Facsimile: 818-501-7852
                                        Email: dcparisi@parisihavens.com
11
                                        Grace E. Tersigni (admitted *pro hac vice*)
12                                      gtersigni@kamberlaw.com
                                        KamberLaw, LLC
13                                      100 Wall Street, 23rd Floor
                                        New York, New York 10005
14                                      Telephone:   (212) 920-3072
                                        Facsimile:   (212) 920-3081
15                                      Email: gtersigni@kamberlaw.com

16
                                        Jeremy R. Wilson (admitted *pro hac vice*)
17                                      Wilson Trosclair & Lovins, PLLC
                                        302 North Market Street, Suite 510
18                                      Dallas, TX 75202
                                        Telephone: (214) 484-1930
19                                      Facsimile: (214) 276-1475
                                         jeremy@wilsontrosclair.com
20

21                                      **Counsel for Plaintiffs**

22

23

24

25

26

27

28
   First Consolidated Amended Class Action Complaint          Case Nos. 11-01067 /11-cv-05465 (CAS) (JCx)

**JURY TRIAL DEMAND**

Plaintiffs hereby demand trial by jury of all issues so triable.

Dated: November 16, 2012

Respectfully submitted,

By: _____
David C. Parisi
Suzanne Havens Beckman

**PARISI AND HAVENS LLP**

David C. Parisi (SBN 162248)
Suzanne Havens Beckman (SBN 188814)
15233 Valleyheart Drive
Sherman Oaks, CA 91403-1545
Telephone: 818-990-1299
Facsimile: 818-501-7852
Email: dcparisi@parisihavens.com
Email: shavens@parisihavens.com

Grace E. Tersigni (admitted *pro hac vice*)
gtersigni@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:   (212) 920-3072
Facsimile:    (212) 920-3081
Email: gtersigni@kamberlaw.com

Jeremy R. Wilson (admitted *pro hac vice*)
Wilson Trosclair & Lovins, PLLC
302 North Market Street, Suite 510
Dallas, TX 75202
Telephone: (214) 484-1930
Facsimile: (214) 276-1475
jeremy@wilsontrosclair.com

**Counsel for Plaintiffs**

1

## DECLARATION OF DAVID C. PARISI

2

3      I, David C. Parisi, hereby declare on oath as follows:

4      1.      I am an attorney licensed to practice law in the state of California. I

5  am over the age of 18 years and I have personal knowledge of the matters attested

6  to herein. If called upon to testify, I would and could competently do so.

7      1.      I make this declaration pursuant to California Civil Code section

8  1780(c) on behalf of my client, Plaintiff JULIANNE HAYES, on behalf of her-

9  self and all others similarly situated.

10     2.      Defendant L'Oreal USA, Inc. is a Delaware corporation with its

11 principal place of business at 575 5th Avenue, New York. L'Oreal USA, Inc.

12 does business in New York and throughout the United States.

13     3.      Defendant, L'Oreal USA Products, Inc. is a Delaware corporation

14 with its principal place of business at 575 5th Avenue, New York. L'Oreal USA

15 Products, Inc. does business in California and throughout the United States.

16     I declare under penalty of perjury under the laws of the State of California

17 that the foregoing is true and correct.

18     Dated this 16th day of November 2012 at Los Angeles, California.

19 By:

20 _____

David C. Parisi

21 One of the Attorneys for Plaintiffs

22

23

24

25

26

27

28

First Consolidated Amended Class Action Complaint          Case Nos. 11-01067/11-cv-05465 (CAS) (JCx)