## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| David Parisi | Katherine Murray |
| Grace Tersigni | Nicholas Begakis |

**Proceedings:**    RENEWED MOTION TO CERTIFY CALIFORNIA CLASS (Case No. 11-1067, Dkt. 120, filed January 6, 2014)

MOTION TO DECERTIFY NEW YORK CLASS (Case No. 11-5465, Dkt. 129, filed April 25, 2013)

MOTION TO EXCLUDE EXPERT OPINIONS OF DR. SANJOG MISRA (Case No. 11-5465, Dkt. 128, filed April 11, 2014)

## I.    INTRODUCTION

On February 3, 2011, plaintiffs Jill Guido, a California resident, and Natalie Lefebvre, a Texas resident, commenced this action in this Court by filing a complaint against defendants L'Oreal, USA, Inc. and L'Oreal USA Products, Inc. (collectively "L'Oreal") in Case No. 11-1067. Meanwhile, on February 4, 2011, plaintiffs Catherine Altamura, a California resident, and Lisa Pearly, a New York resident, filed a similar complaint in the United States District Court for the Southern District of New York against the same defendants. On May 5, 2011, Altamura and Pearly voluntarily dismissed the New York action and refiled the action in this Court on June 30, 2011. See Case No. 11-5465. By order dated September 19, 2011, the Court consolidated the two cases for pretrial purposes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|----------|---|------|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

On November 16, 2012 , pursuant to a stipulation by the parties, plaintiffs submitted a First Consolidated Class Action Complaint ("FCAC"). The FCAC asserts claims on behalf of two putative classes of California and New York residents who purchased a L'Oreal hair care product known as Garnier Fructis Sleek & Shine Anti-Frizz Serum ("Serum"). The FCAC alleges seven claims for relief: (1) breach of implied warranty of merchantability, (2) breach of implied warranty of fitness, (3) violation of California Business and Professions Code § 17200 ("UCL"), (4) violation of the California Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750, (5) false advertising under California Business and Professions Code § 17500 ("FAL"), (6) deceptive acts and practices pursuant to New York General Business Law § 349, and (7) false advertising pursuant to New York General Business Law § 350.

By order dated July 1, 2013, the Court granted in part and denied in part plaintiffs' motion for class certification. The Court certified a class consisting of New York purchasers of the Serum. The Court declined to certify a class of California purchasers of the Serum, based on the Court's conclusion that plaintiffs had not articulated a classwide theory of damages, as required by Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1429 (2013).

On January 6, 2014, plaintiffs filed a renewed motion to certify a California class. Case No. 11-1067, Dkt. 120. L'Oreal filed an opposition on April 25, 2014, Case No. 11-1067, Dkt. 132 and plaintiffs filed a reply on May 9, 2014, Case No. 11-1067, Dkt. 133.

On April 11, 2014, L'Oreal filed a motion to exclude the testimony of Dr. Sanjog Misra, who submitted an expert declaration in support of plaintiffs' renewed motion to certify a California class. Case No. 11-5465, Dkt. 128. Plaintiffs filed an opposition on April 25, 2014, Case No. 11-5465, Dkt. 130, and L'Oreal filed a reply on May 9, 2014, Case No. 11-5465, Dkt. 131.

On April 11, 2014, L'Oreal filed a motion to decertify the New York class. Case No. 11-5465, Dkt. 129. Plaintiffs filed an opposition on May 24, 2014, Case No. 11-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

5465, Dkt. 133 and L'Oreal filed a reply on June 2, 2014, Case No. 11-5465, Dkt. 134. After considering the parties' arguments, the Court finds and concludes as follows.

## II.  BACKGROUND

These facts are substantially adopted from the Court's prior orders on class certification.  Serum is a hairstyling product manufactured, distributed, and marketed by L'Oreal for sale in retail outlets nationwide.  Declaration of Grace Tersigni ("Tersigni Decl.") Ex. 1, at 24–25 (deposition of Garnier Senior VP Katheryn Peeler).  Serum was launched in 2004 for a suggested retail price of $5.99 per bottle, which has remained constant throughout the product's existence in the market.  Id. at 69:9–12.  During the Class Period, defined below, L'Oreal sold approximately 9.9 million units of Serum throughout the nation.  Id., Ex. 2 at 1.

Serum's label and packaging has changed since its introduction to the market.  When it was launched in 2004, Serum was sold in a clear green round-shaped bottle with a label that included a flammability warning written in green text.  Near the end of 2006, Garnier removed denatured alcohol as an ingredient in Serum in order to comply with California's Volatile Organic Compound regulations, Cal. Code Regs. tit. 17, § 94509(a).  At the beginning of 2007, Garnier altered the bottle's shape, from a round shape to a bell shape, and removed the flammability warning.  Id. at 61:21–62:19.  Other than this change in Serum's packaging, the labeling has been uniform, and does not vary from bottle to bottle.

Plaintiffs contend that Serum is flammable, even though the denatured alcohol has been removed, and that the product should been sold with a flammability warning.  L'Oreal, however, argues that because the alcohol has been removed from Serum, it no longer requires a flammability warning.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|----------|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

Plaintiffs seek to represent the following classes:

California Class: All individuals who purchased Garnier Fructis Sleek & Shine Anti-Frizz Serum in the state of California at any time during the period of February 2, 2008 to the present.

New York Class: All individuals who purchased Garnier Fructis Sleek & Shine Anti-Frizz Serum in the state of New York at any time during the period of February 4, 2008 to the present.

## III.   LEGAL STANDARD

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing Crown, Cork & Seal Co. v. Parking, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure 23 governs class actions. A class action "may be certified if the trial court is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982).

To certify a class action, plaintiffs must set forth facts that provide prima facie support for the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2548 (2011); Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.), 213 F.3d 454, 462 (9th Cir. 2000). These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." Falcon, 457 U.S. at 155 (quoting Califano v. Yamasaki, 442, U.S. 682, 701 (1979)).

If the Court finds that the action meets the prerequisites of Rule 23(a), the Court must then consider whether the class is maintainable under Rule 23(b). Dukes, 131 S.Ct. at 2548. Rule 23(b)(3) governs cases where monetary relief is the predominant form of relief sought, as is the case here. A class is maintainable under Rule 23(b)(3) where

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

"questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)). The predominance inquiry measures the relative weight of the common to individualized claims. Id. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001) (citing Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996)).

In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests members in the class have in individually controlling the prosecution or defense of the separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. Id. at 1190–1993. "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." Id. (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 at 535–39 (2d. ed. 1986)).

More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . . compliance with the rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Dukes, 131 S.Ct. at 2551. This requires a district court to conduct "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

## IV.    ANALYSIS

The Court previously found that plaintiffs had satisfied all of the requirements of Rule 23, except for articulating a classwide method of calculating damages for the California class.  Plaintiffs now renew their motion to certify the California class, and support their motion with the opinion of Dr. Sanjog Misra, a professor of marketing at the University of California Los Angeles Anderson School of Management.  L'Oreal moves to exclude the testimony of Dr. Misra, and also argues that Dr. Misra's testimony does not articulate a classwide theory of damages.  L'Oreal further argues that (1) the California class no longer satisfies the other requirements of Rule 23, and (2) that the New York class no longer satisfies the other requirements of Rule 23, and should therefore be decertified.  The Court begins with Dr. Misra and classwide calculation of damages, and then turns to the balance of L'Oreal's arguments on certification and decertification.

### A.    Classwide Calculation of Damages

The crux of plaintiff's renewed motion to certify the California class is Dr. Misra's testimony that damages can be calculated on a classwide basis.  L'Oreal seeks to exclude this testimony under <u>Daubert v. Merrell Dow Pharms.</u>, Inc. 509 U.S. 579 (1993).  On June 17, 2014, the Court held an evidentiary hearing, at which Dr. Misra testified about his opinions in this case.  The Court begins its analysis by summarizing Dr. Misra's testimony and opinions, then addresses the admissibility of those opinions under Rule 702 and <u>Daubert</u>, and finally analyzes whether Dr. Misra's testimony remedies the deficiencies identified in the Court's previous order on class certification.

### 1.    Testimony of Dr. Misra

Dr. Sanjog Misra is a professor of marketing at the UCLA Anderson School of Management.  Misra Decl. ¶ 1.  He graduated from Ravenshaw College, in Cuttack India, and received a Master's degree in statistics and a Doctorate in management from the State University of New York at Buffalo.  <u>Id.</u> ¶ 2.  Before joining UCLA, Dr. Misra taught at the Simon School of Business at the University of Rochester.  <u>Id.</u> ¶ 3.  He has taught

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

masters and Ph.D. courses on Applied Econometrics, Marketing Models, Statistics and Decision Making, and other subjects.  Id. ¶ 3. Dr. Misra's research focuses on the use of statistical models to understand how consumers and firms make decisions, and how marketing factors into those decisions.  Id. ¶ 4.  Dr. Misra's research on these subjects has been published in several journals in the field.  Id.

Plaintiffs retained Dr. Misra to opine on whether methodologies existed which could determine if there was a method of quantifying the impact of a flammability warning on the market price of the Serum, and whether there was a method for calculating the "true market value" of the Serum.  Id. ¶ 8.  Dr. Misra opined that two methodologies existed which could calculate the true market value of the Serum: Random Coefficient Demand Estimation ("RCDE") and Conjoint analysis.  Id. ¶ 9.

RCDE is a methodology that aims to estimate how various product features, including the price of the product, affect sales for the product.  Id. ¶ 13.  RCDE is based on a model of rational choice, assuming that consumers make rational purchasing decisions that trade off product features against price.  Id. ¶ 14.  When consumers choose between multiple products, they choose the product that offers them the highest overall utility, therefore revealing which features the consumers value, and how much the consumers value them.  Id. ¶¶ 14-15.  By running regressions on historical market share data, the RCDE model estimates a distribution of tastes and preferences of consumers. Transcript of June 17, 2014 Evidentiary Hearing ("Transcript") at 8:24-9:1.  Dr. Misra testified that RCDE is "required reading" in marketing and economics Ph.D. programs, and "is now a fairly standard approach to estimating demand models."  Id. at 9:10-15. Dr. Misra has performed RCDE analysis as part of his consultation services with various industries; Dr. Misra offered the example of using RCDE to evaluate how different drug characteristics and marketing activities affect doctor's prescription choices.  Id. 14:7-20.

Dr. Misra opines that the perceived risk associated with a flammability warning on the Serum is a type of product feature that is susceptible to RCDE analysis.  Id. ¶ 16.  By running regressions on historical marketing data for the Serum and related products, a function can be generated that estimates how much consumers value the perceived risk of flammability, versus the other features of Serum.  In turn, this function would reveal the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

difference, if any, between the historical market price of the Serum, and the true market value of a Serum displaying a flammability warning. Id. ¶ 19. Dr. Misra testified that historical marketing data about product sales is typically available from syndicated data sources such as Nielsen, and that this syndicated data is what academics and firms usually use when performing RCDE analysis. Transcript at 15:25-16:7, 16:23-17:17. Dr. Misra testified that, to the best of his knowledge, these sources, as well as potentially L'Oreal itself, possessed the marketing and sales data necessary to run RCDE on the Serum. Id. at 68:7-16. But Dr. Misra acknowledged at the hearing on June 17, 2014, that he was not certain that the data existed. See id. at 18:18-19 ("So I cannot claim to know whether or not it exists for this particular product."). Dr. Misra also conceded that without this data, an RCDE analysis could not be performed on the Serum. See id. at 68:7 ("That's true. The data has to exist.").

Dr. Misra also testified about a second methodology, Conjoint analysis. Conjoint analysis works on principles similar to RCDE analysis, except that the regressions are based on surveys of consumers, rather than historical sales data. Misra Decl. ¶ 21. Conjoint analysis has been used for decades as a way of estimating the market's willingess to pay for various product features. Id. To perform a Conjoint analysis, consumers are asked to answer surveys in which they repeatedly chose between similar, but slightly different products. Id. ¶ 22. As an example, Dr. Misra suggests that surveys here could ask consumers to choose between Serums that differed in price, brand, and the presence of a flammability warning. Id. ¶ 22(i). As with RCDE, this survey data can then be regressed to generate a function that captures the value of the product as a function of various product features. Id. ¶ 22(v). This function, in turn, will estimate the portion of the Serum's market price attributable to the lack of a flammability warning.

As between RCDE and Conjoint analysis, Dr. Misra expressed a preference for RCDE because it is based on historical data, but also noted that Conjoint analysis is more flexible because the surveys can be customized. Misra Decl. ¶ 28. Dr. Misra has not yet performed a RCDE or Conjoint analysis in this case. Transcript at 32:20-23. Nor has Dr. Misra administered the consumer surveys that would be needed to generate the data required for a Conjoint analysis. Id. at 31:19-21. However, Dr. Misra opines that he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

does not need to run the models in order to discuss their potential application to this case. Id. at 38:8-21.

2.      Admissibility of Dr. Misra's Testimony

L'Oreal challenges the admissibility of Dr. Misra's testimony under Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). At the outset, the parties dispute how Daubert and Rule 702 apply at the class certification stage. L'Oreal asserts that this court should apply a "full Daubert inquiry" in deciding whether to certify the California class. L'Oreal further argues that Ellis v. Costco Wholesale Corp., 657 F.3d 970 (9th Cir. 2011), commands the Court to evaluate both the admissibility and the persuasiveness of Dr. Misra's testimony.

Plaintiffs, by contrast, urge the Court to adopt a "tailored" Daubert analysis, which examines "whether an expert's opinion was sufficiently reliable to admit for the purpose of proving or disproving Rule 23 criteria, such as commonality and predominance." Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 495 (C.D. Cal. 2012); see also Bruce v. Harley-Davidson Motor Co., Inc., 2012 WL 769604, at *4 (C.D. Cal. Jan. 23, 2012) (adopting "a 'tailored' or 'focused' inquiry [which] assesse[s] whether the experts' opinions, based on their areas of expertise and the reliability of their analysis of the available evidence, should be considered in deciding the issues relating to class certification"). Plaintiffs cite In re Zurn Pex Plumbing Prods. Liab. Litig., 644 F.3d 604, 612-13 (8th Cir. 2011), which held that a full Daubert analysis was not appropriate at class certification because (1) merits discovery was still ongoing, (2) Daubert's goal of "protect[ing] juries from being swayed by dubious scientific testimony . . . is not implicated at the class certification stage," and (3) class certification is inherently tentative and subject to later revision.

The interaction between Daubert and class certification is an area of considerable uncertainty at the moment. See Tait, 289 F.R.D. at 490 (discussing contrasting views). Comcast, in particular, deepened this uncertainty by granting certiorari on the Daubert-at-certification question, but then deciding the case on different grounds. See Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1435 (2013) (Ginsburg, J. and Breyer, J., dissenting).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

Here, however, the Court need not wade into this debate, as the Court finds that Dr. Misra's testimony is admissible even when scrutinized with the full force of <u>Daubert</u>.

Under <u>Daubert</u>, a trial judge acts as a "gatekeeper" to insure that expert testimony "is not only relevant, but reliable." <u>Daubert</u>, 509 U.S. at 589. A trial judge executes this "gatekeeper" role whether expert testimony is scientific or non-scientific, with the purpose of ensuring that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 152 (1999).

The Supreme Court in <u>Daubert</u> enumerated a list of factors useful for evaluating the reliability of a scientific expert. These factors include, but are not limited to: "(1) whether the scientific theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) whether there is a known or potential error rate, and (4) whether the theory or technique is generally accepted in the relevant scientific community." <u>Mukhtar v. Cal. State Uni., Hayward</u>, 299 F.3d 1053, 1064 (9th Cir. 2002); <u>see</u> <u>Daubert v. Merrell Dow Pharm., Inc.</u> ("<u>Daubert II</u>"), 43 F.3d 1311, 1317 (9th Cir. 1995) (adding as a factor "whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying."). Trial courts have broad discretion to determine whether these factors are "reasonable measures of reliability" for evaluating non-scientific testimony. <u>Kuhmo Tire</u>, 526 F.3d at 153. In exercising this broad discretion, "not only must the trial court be given broad discretion to decide whether to admit expert testimony, it must have the same kind of latitude in deciding how to test an expert's reliability." <u>United States v. Hankey</u>, 203 F.3d 1160, 1168 (9th Cir. 2000). When an expert's testimony is not scientific or technical, the reliability of that testimony need not be based on "a particular methodology or technical framework," but instead can be found reliable based on the expert's knowledge and experience alone. <u>Hangarter v. Provident Life and Acc. Ins. Co.</u>, 373 F.3d 998, 1018 (9th Cir. 2004).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|----------|------------------------------------------------------------------|------|---------------|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

In addition to evaluating an expert's reliability, a trial court must also determine whether an expert has "appropriate qualifications – i.e., some special knowledge, skill, experience, training or education." Hankey, 203 F.3d at 1168. "Rule 702 contemplates a broad conception of expert qualifications." Hangarter, 373 F.3d at 1015. Nonetheless, there are limitations on when an individual qualifies as an expert in a particular field. In particular, the fact that an expert is qualified in a particular field or discipline does not automatically qualify that expert in related disciplines. Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999) (expert qualified to testify regarding fire reconstruction and investigation not qualified to testify on automobile accident reconstruction).

Applying these standards here, the Court finds that Dr. Misra's testimony about RCDE and Conjoint analysis is sufficiently reliable to pass muster under Rule 702 and Daubert.[1] At the hearing on June 17, 2014, Dr. Misra testified persuasively that both RCDE and Conjoint analysis are methodologies that are well-accepted in the econometrics field. See Transcript at 5:22-6:1 ("[RCDE] is now a fairly standard approach to estimating demand models. It's required reading. And every single Ph.D. student that goes through any program in economics or marketing, now even in political science or sociology, are required to understand and adopt this method."); id. at 7:19-24 (similar testimony regarding Conjoint analysis). Both RCDE and Conjoint analysis have been the subject of extensive literature published in peer-reviewed journals, and Dr. Misra himself has published a number of peer-reviewed papers discussing these methodologies. See Transcript at 8:5-9:15; Misra Decl. Ex. 1 (Dr. Misra's CV, listing publications). Finally, this lengthy publication history illustrates that RCDE and Conjoint analysis "grow[] naturally and directly out of research . . . conducted independent of the litigation" and have not been "developed . . . expressly for purposes of testifying." Daubert II, 43 F.3d at 1317.

---

[1] The Court does not separately address Daubert's requirement that expert testimony "fit" the issue at hand, see Daubert II, 43 F.3d at 1315. Whether Dr. Misra's expert testimony is "relevant to the task at hand," id., asks essentially the same question as whether Dr. Misra's testimony satisfies plaintiff's burden under Rule 23 and Comcast.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|----------|---------------------------------|------|---------------|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

Moreover, even L'Oreal's expert, Dr. Dominque Hanssens, testified at deposition that he himself has used RCDE and Conjoint analysis in his academic work and when consulting for firms. See Havens Beckman Decl. Ex. 3 (Hannsens Depo.) at 45:15-25; 49:19-51:2. Dr. Hanssens also conceded that Conjoint analysis could "reach a sound conclusion regarding the impact of a flammability warning on the price of serum." Begakis Decl. Ex I. This concession parallels the conclusions of several district courts who have considered the admissibility of Conjoint analysis under Daubert. See, e.g., Apple, Inc. v. Samsung Elecs. Co., Ltd., 2014 WL 794328 at *17 (N.D. Cal. Feb. 25, 2014) ("Thus, the Court concludes that Dr. Vellturo's use of Dr. Hauser's choice-based Conjoint survey with an outside option to quantify the diminished demand that Samsung would have experienced after it designed around the patented features is sufficiently supported by the literature and is therefore admissible."); Khoday v. Symantec Corp., 2014 WL 1281600, at *33 (D. Minn. Mar. 13, 2014) ("Plaintiffs have presented the Conjoint analysis used by their expert Gaskin as a means to isolate the value for specific convenience features of the download insurance products."); Microsoft Corp. v. Motorola, Inc., 904 F. Supp. 2d 1109, 1120 (W.D. Wash. 2012) (finding Conjoint analysis "admissible as relevant under FRE 401 and 402 and . . . sufficiently reliable under FRE 702 and Daubert."). Although RCDE does not share this case-law pedigree, Dr. Misra has testified that the "the fundamental primitives of both methods are identical." Transcript at 6:21-22.

Finally, the Court concludes that Dr. Misra has "appropriate qualifications" to offer evidence on the subject of RCDE and Conjoint analysis. Hankey, 203 F.3d at 1168. As discussed above, Dr. Misra has a doctorate in management, and has published papers on the subject of RCDE and Conjoint analysis, and currently teaches both models as part of his curriculum at the UCLA Anderson School of Business. These credentials show that Dr. Misra has sufficient "knowledge, skill, experience, training, or education," Fed. R. Evid. 702, to testify on the subject of RCDE and Conjoint analysis. Accordingly, the Court concludes that RCDE and Conjoint analysis are not "junk science" and that Dr. Misra's testimony is thus admissible under Daubert and the Federal Rules of Evidence. See Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

L'Oreal resists this conclusion on three grounds, none of which are availing. First and foremost, L'Oreal contends that Dr. Misra's testimony is inadmissible because Dr. Misra has not yet performed either an RCDE or a Conjoint analysis in this case. Because Dr. Misra has not yet run either of the models, the Court cannot determine whether Dr. Misra has "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(d).

This argument misconstrues Dr. Misra's testimony, and misstates plaintiffs' burden on class certification. As discussed at greater length below, plaintiffs need not show on class certification that they paid a premium for Serum due to the absence of a flammability warning. Instead, they must merely provide a method for calculating that premium on a classwide basis.

The distinction is well illustrated by Pedroza v. PetSmart, Inc., 2013 WL 1490667 (C.D. Cal. Jan. 28, 2013), one of the cases relied upon by L'Oreal. The Pedroza plaintiffs sought to certify a class of PetSmart store managers, alleging the PetSmart had a policy and practice of misclassifying the managers as exempt from various wage-and-hour regulations. Under the substantive law at issue, the store managers were exempt if they spent "more than 51% of their time on managerial tasks in any given workweek." Id. at *6 (quoting Dunbar v. Albertson's, Inc., 141 Cal. App. 4th 1422, 1426 (2006)). The Pedroza court declined to certify the class because plaintiff had not shown that they were "subjected to a common policy or practice requiring them to spend more than 50 percent of their time on nonexempt tasks," and thus failed to show that their claims were capable of class-wide resolution. Id. at *11. In reaching this conclusion, the Pedroza court excluded under Daubert an expert's testimony that a survey could establish on a classwide basis that the managers were not exempt:

> Friedland fails to provide any specific information about the methodology of his proposed survey, much less provide sufficient information for us to evaluate the methodology's soundness. Indeed, Friedland does not explain what data he plans to use in developing the survey, why such data is sufficiently complete and reliable, how he plans to use such data to develop a survey, how he plans to select a representative sample of SMs to participate in the survey, why such

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|----------|-------------------------------------------------------------------|------|---------------|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

a selection would be representative, and why the survey will reliably show how the SM allocated their time between exempt and nonexempt tasks. Instead, F[ri]edland merely "promises" that he will be able to complete a survey that can reliably show whether the SMs spent more than 50 percent of their time on nonexempt tasks, an issue that concerns commonality, as discussed below. We find and conclude that this type of unsupported, conclusory "promise" of reliable data is insufficient to pass muster under <u>Daubert</u>.

<u>Id.</u> at *3. The key step in this analysis is that the <u>Pedroza</u> plaintiffs directly relied on the results of the proposed survey to establish commonality. If the survey did not accurately determine the status of the individual store managers, then it could not provide a method for adjudicating the case on a classwide basis. Here, by contrast, the actual results of the RCDE and Conjoint models—the premium attributable to the absence of a flammability warning—are irrelevant to commonality and predominance. It does not matter whether the models determine that class members paid a premium of 25 cents or 50 cents—or perhaps, as L'Oreal contends, 0 cents. All that matters is that the premium can be determined for each class member "in one stroke." <u>Dukes</u>, 131 S. Ct. at 2551. Dr. Misra's testimony, as he himself explained, <u>see</u> Transcript at 32:14-19, was properly directed to this question. Accordingly, the Court concludes that <u>Daubert</u> does not require plaintiffs to actually run their damages models to make Dr. Misra's testimony admissible for purposes of class certification. <u>Cf. Werdebaugh v. Blue Diamond Growers</u>, 2014 WL 2191901 (N.D. Cal. May 23, 2014) ("In sum, while Dr. Capps has yet to run the model and determine what price differences, if any, are attributable to the alleged label misrepresentations, he sets forth what is in the Court's view a workable model of calculating damages . . . .").

Second, L'Oreal criticizes a statement in Dr. Misra's declaration observing that their was a 39-cent change in the price of Serum after the flammability warning was removed from the Serum bottle. Misra. Decl. ¶ 9(iii). L'Oreal argues that this calculation suffers from a host of infirmities, including that it does not account for inflation and is based on overbroad sales data. The Court credits Dr. Misra's explanation that he noted the 39-cent change as a preliminary "fact-checking device," and that this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

simple comparison does not factor into either RCDE or Conjoint analysis. Transcript at 47:17-48:9.

Finally, L'Oreal argues that Dr. Misra is not qualified to opine on flammability warnings because (1) he has never testified in litigation before and (2) Dr. Misra does not have special or expert knowledge about calculating the value attributable to a flammability warning, as opposed to other product features. Neither contention is persuasive. First, "[t]hat [Dr. Misra] had never before testified as an expert witness does not preclude his opining as an expert in this case." United States v. Smith, 520 F.3d 1097, 1105 (9th Cir. 2008) aff'd on reh'g en banc, 561 F.3d 934 (9th Cir. 2009). Second, L'Oreal's contention that Dr. Misra is not qualified in the field of evaluating flammability warnings defines the relevant field of expertise too narrowly. In the absence of some suggestion that flammability warnings are a distinct field of inquiry, Dr. Misra's general qualifications in the field of attributing value to product features are more than sufficient. "A lack of specialization affects the weight of the expert's testimony, not its admissibility." In re Silicone Gel Breasts Implants Prods. Liab. Litig., 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004).

Accordingly, the Court concludes that Dr. Misra's opinion is admissible under Rule 702 and Daubert.

3.     Predominance under Comcast

The Court previously declined to certify the California class because "[u]nder Comcast, courts can only certify a Rule 23(b)(3) class if there is evidence demonstrating the existence of a classwide method of awarding relief that is consistent with the plaintiffs' theory of liability." Case No. 11-5465, Dkt. 108 at 23. Without a method of calculating classwide relief, plaintiff could not establish that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Accordingly, the Court now turns to the question of whether RCDE and Conjoint analysis offer a classwide method of calculating relief, and whether those methods are consistent with plaintiffs' theory of liability.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|----------|------------------------------------------------------------------|------|---------------|
| Title    | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

First, the Court finds that both models calculate relief on a classwide basis. RCDE and Conjoint analysis purport to calculate what Serum would have cost if the Serum bottle had borne a flammability warning. This is the price that plaintiffs allege that all class members would have paid if L'Oreal had complied with its alleged obligations. Because, under this theory, every class member allegedly overpaid by a uniform amount, RCDE and Conjoint analysis may be applied on a classwide basis.

Second, both RCDE and Conjoint analysis are consistent with plaintiffs' theory of liability. As the Court explained in its prior order on class certification, plaintiff's theory of liability rests on the claim that, due to the absence of a flammability warning on the Serum bottle, "Serum's true market price is either $0 or a figure substantially lower than $6." Case No. 11-5465, Dkt. 108 at 20. The key component of the damages model is thus the "true market value" of the Serum bearing a flammability warning: "Once the true market price has been computed, plaintiffs contend that each class member can be awarded, for each bottle of Serum purchased, the difference between Serum's historical market price and its true market price." Id. Both RCDE and Conjoint analysis provide this key component. As Dr. Misra explained, these methodologies "are capable of discerning and quantifying the -- the value of the product and market outcomes associated with it such as prices or market shares or quantities with and without the flammability warning." Transcript at 12:5-8. And because RCDE and Conjoint analysis can predict the "value of the product" without a flammability warning, these models can calculate the true market value of the Serum. As such, both methodologies are consistent with plaintiffs' theory of liability.

However, while the Court finds that both RCDE and Conjoint analysis could potentially calculate damages on a classwide basis, the Court nonetheless concludes that RCDE analysis does not provide a basis for class certification at this juncture. As explained above, RCDE analysis isolates the value of particular product features based on the regression analysis of historical sales data. Dr. Misra has opined that he believes such data is available through a variety of syndicated sources, as well as potentially from L'Oreal itself. But when the Court pressed him on this subject at the evidentiary hearing on June 17, 2014, Dr. Misra conceded that he "cannot claim to know whether or not [the data] exists for this particular product."). Dr. Misra also conceded that without this data,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

an RCDE analysis could not be performed on the Serum.  Transcript at 18:18-19.  Nor have plaintiffs provided any other assurance that the required sales data can be procured from either L'Oreal or some other source.  L'Oreal, for its part, contends that the data does not exist.

Without this data, Dr. Misra cannot perform an RCDE analysis in this case. See id. at 68:7 ("That's true.  The data has to exist.").  Moreover, because plaintiffs have not yet procured the relevant sales data, the Court cannot accurately evaluate the contention of L'Oreal's expert Dr. Hanssens that there has not been sufficient variation in the sales history of the Serum for RCDE to isolate the causal impact of the removal of the flammability warning.  Accordingly, the Court concludes that, whatever the theoretical merits of RCDE, plaintiffs have not established that RCDE can actually provide a classwide calculation of damages in this case.[2]  As such, Dr. Misra's testimony about RCDE does not satisfy the predominance requirement of Rule 23(b)(3).

Conjoint analysis, by contrast to RCDE, does not require preexisting sales data to generate conclusions about the Serum.  Instead, Conjoint analysis relies on data produced by surveys performed specifically for the purposes of evaluating a specific product.  As such, these surveys can be tailored to fit the purposes of the Conjoint analysis in question.  As Dr. Misra explained: "If you have the right type of data for a coefficients demand model, that's – that's fantastic you can get very good results with that. If you don't have access to that, you can do a Conjoint."  Transcript at 38:13-16.  Unlike RCDE, then, there do not appear to be any potentially insurmountable barriers to the application of Conjoint

---

[2] The Court emphasizes the inherent tentativeness of this conclusion.  As discussed above, RCDE appears to be a methodologically sound approach to proving classwide damages.  If plaintiffs can procure the necessary historical sales data, than RCDE may well come in to prove damages at a later stage.  In particular, the Court distinguishes the circumstances here from the situation in Comcast, where the district court "accepted only one of respondents' four proposed theories of antitrust impact."  Comcast, 133 S. Ct. at 1428.  Here, the Court "accepts" RCDE as a potential method of proof, but finds that plaintiffs have not yet established all of the prerequisites necessary for its use in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|----------|------------------------------------------------------------------|------|---------------|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

analysis in this case.  Cf. Werdebaugh,, 2014 WL 2191901 at *26 ("Defendants provide no basis to believe that . . . the regression analysis will be unworkable.").  As such, the Court concludes that Dr. Misra's testimony concerning Conjoint analysis satisfactorily establishes that common issues predominate with respect to the California class.

The thrust of L'Oreal's opposition is that plaintiffs have not actually shown that they paid any premium for the Serum due to the absence of a flammability warning.  At the evidentiary hearing held on June 17, 2014, L'Oreal particularly stressed the D.C. Circuit's decision in In re Rail Freight Fuel Surcharge Antitrust Litig., 725 F.3d 244 (D.C. Cir. 2013).  In Rail Freight Fuel Surcharge, a class of railroad shippers accused freight railroads of violating antitrust laws by conspiring to fix the price of fuel surcharges.  Id. at 248.  In support of their motion for class certification, the plaintiffs submitted a damages regression model that purported to isolate the portion of the fuel surcharges that was attributable to the railroads' price-fixing conspiracy.  Id. at 250.  Characterizing these damages models as "plausible" and "workable," the district court certified the class.  Id. at 251.

The D.C. Circuit reversed.  As relevant here, the D.C. Circuit first focused on what it perceived to be a serious flaw in the plaintiffs' damages model.  "The model purport[ed] to quantify the injury in fact to all class members attributable to the defendants' collusive conduct."  Id. at 252.  But the model failed to account for the fact that certain members of the class had their shipping rates fixed by legacy contracts which pre-dated the alleged price-fixing conspiracy.  Id.  The model was thus prone to generate false positives, by calculating that class members with legacy contracts had suffered damages, when in fact those class members had suffered no damages because their rates were locked in by the legacy contracts.  Citing Comcast, which had been published after the district court's decision to certify the class, the D.C. Circuit found that this flaw in the plaintiff's damages model precluded class certification: "No damages model, no predominance, no class certification."  Id. at 253.

L'Oreal cites Rail Freight Fuel Surcharge for the proposition that Rule 23 requires the plaintiffs to proffer a damages model that establishes classwide injury.  See Mot. Exclude 12-13; Transcript at 84:4-85:2.  In other words, on L'Oreal's reading of Rail

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

Freight Fuel Surcharge, a plaintiff must do more than merely show that a classwide model exists—they much show that classwide injury exists. And plaintiffs have not met this burden, L'Oreal contends, because Dr. Misra has not yet performed either an RCDE or Conjoint analysis.

This argument fails, for two reasons. First, L'Oreal misreads Rail Freight Fuel Surcharge. The D.C. Circuit did not hold that Rule 23 required the plaintiffs to prove that they had in fact been injured by the alleged price fixing conspiracy. Instead, the plaintiffs need only "show that they can prove, through common evidence, that all class members were in fact injured by the alleged conspiracy." Rail Freight Fuel Surcharge, 725 F.3d at 252 (emphasis added). The D.C. Circuit concluded that the plaintiffs in Rail Freight Fuel Surcharge did not make this showing, because of the false-positive problem discussed above. But critical to the D.C. Circuit's analysis was the fact that the model miscalculated the damages of some, but not all, of the class members. As such, the model provides no assurance that the action would not degenerate into plaintiff-by-plaintiff inquiries into whether the model accurately calculated each classmember's particular damages. And "[w]hen a case turns on individualized proof of injury, separate trials are in order." Id. at 253.

It is this risk of countless individualized mini-trials that informed the Supreme Court's reasoning in Comcast, and drove the D.C. Circuit's holding in Rail Freight Fuel Surcharge. Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1434-35, 185 L. Ed. 2d 515 (2013) ("But such assurance is not provided by a methodology that identifies damages that are not the result of the wrong. . . . The permutations involving four theories of liability and 2 million subscribers located in 16 counties are nearly endless."). Here, by contrast, there is no suggestion that either RCDE or Conjoint analysis could fail in a way that would fracture the class into plaintiff-by-plaintiff mini-trials. Both models purport to calculate the price premium caused by L'Oreal's omission of a flammability warning from the Serum bottle. Both models calculate the premium classwide—every class member paid the same extra charge for each bottle of Serum. Of course, plaintiffs' premium calculation may be wrong. Or, as L'Oreal suggests, a properly performed RCDE and Conjoint analysis may reveal that there was in fact no extra charge associated with the removal of the flammability warning. But under either scenario, plaintiffs'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

claims would fail across the board, not plaintiff-by-plaintiff. "A failure of proof on the common question . . . ends the litigation and thus will never cause individual questions . . . to overwhelm questions common to the class." Amgen, 133 S. Ct. at 1196. Accordingly, the Court concludes that Rail Freight Fuel Surcharge, read properly, does not require plaintiffs to actually prove classwide injury as a predicate to class certification.[3]

Second, even if Rail Freight Fuel Surcharge did require classwide proof of injury at this stage, that is not the law in this circuit. Ninth Circuit precedent could not be clearer that the strength of a plaintiff's claim is not at issue when deciding whether to certify a class. "'[W]hether class members could actually prevail on the merits of their claims' is not a proper inquiry in determining the preliminary question 'whether common questions exist.'" Stockwell v. City & Cnty. of San Francisco, 749 F.3d 1107, 1112 (9th Cir. 2014) (quoting Ellis v. Costco Wholesale Corp., 657 F.3d 970, 983 n.8 (9th Cir. 2011)); see also id. Stockwell v. City & Cnty. of San Francisco, 749 F.3d 1107, 1112 (9th Cir. 2014) ("[D]emonstrating commonality does not require proof that the putative class will prevail on whatever common questions it identifies."). "Rule 23 does not authorize a

---

[3] L'Oreal's reliance on Lanovaz v. Twinings N. Am., Inc., 2014 WL 1652338 (N.D. Cal. Apr. 24, 2014) and In re POM Wonderful LLC, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) is similarly unavailing. In Lanovaz, the court expressly noted that a regression model "might arrive at a legally relevant damages analysis." Id. at *6. But the expert in Lanovaz "expressly abandon[ed] a regression analysis as a method of calculating damages." Id. Here, Dr. Misra, far from abandoning regression analysis, continues to insist on its applicability to this case. Similarly, in POM Wonderful, the plaintiff's expert simply "assumed that 100% of that price difference was attributable to Pom's alleged misrepresentations." 2014 WL 1225184 at *4. His analysis therefore did not "answer the critical question [of] why that price difference existed, or to what extent it was a result of Pom's actions." Id. Here, by contrast, both RCDE and Conjoint analysis "evaluate the extent to which the flammability warning on Serum impacts consumer decisions." Misra Decl. ¶ 9(i).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

preliminary inquiry into the merits of the suit for purposes other than determining whether certification was proper. . . . To hold otherwise would turn class certification into a mini-trial." Ellis, 657 F.3d 970, 983 (9th Cir. 2011); see also Parsons v. Ryan, 2014 WL 2523682 at *11 n.19 (9th Cir. June 5, 2014) (citing cases).

Accordingly, the Court rejects L'Oreal's contention that plaintiffs must actually establish classwide injury in order to certify the California class. The Court therefore concludes that plaintiffs have established a classwide method of calculating relief, and accordingly have satisfied Rule 23(b)(3)'s predominance requirement.

### B.      Remaining Rule 23 Requirements

Having concluded that plaintiffs have articulated a classwide theory of damages as required by Comcast, the Court turns to the balance of plaintiffs' motion to certify a California class. In considering whether to certify a California class, the Court is not writing on a blank slate. Instead, the Court considers this question against the background of the Court's previous order on class certification, which found that plaintiff had established all of the elements required for certifying a California class, except for a classwide theory of damages. However, in its opposition to plaintiff's renewed motion to certify a California class, L'Oreal advances a number of arguments that, in effect, ask this Court to reconsider its previous ruling that plaintiffs have established all but one of the elements of Rule 23.

L'Oreal similarly moves to decertify the New York class. The Court has a continuing duty to ensure compliance with class action requirements pursuant to Rule 23, and therefore may decertify a class at any time. Falcon, 457 U.S. at 160 ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation."). It is within the Court's discretion to decertify a class. Marlo v. United Parcel Serv., Inc., 639 F.3d 942, 944 (9th Cir. 2011). L'Oreal contends that developments subsequent to the Court's previous order certifying a New York class show that plaintiffs no longer meet all of the elements of Rule 23.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|----------|----------------------------------------------------------|------|---------------|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

At the outset, the parties dispute which party bears the burden of proof on a motion to decertify. Plaintiffs assert that, because a class has already been certified, L'Oreal bears the burden of showing that the class should be decertified. Opp. Decert. 6-7 (citing Stiller v. Coctco Wholesale Corp., 2014 WL 1455440, at *9 (S.D. Cal. April 15, 2014)). L'Oreal, by contrast, argues that the burden on decertification, like the burden on certification, is borne by plaintiffs. The Court finds that L'Oreal has the better of this argument. Marlo, 639 F.3d at 947, unambiguously holds that the party seeking class certification bears the burden of satisfying Rule 23, both at initial certification and on a later motion to decertify. See also Negrete v. Allianz Life Ins. Co. of N. Am., 287 F.R.D. 590, 598 (C.D. Cal. 2012) ("To the extent that pre-Marlo cases conclude that a defendant bears the burden on a motion to decertify . . . , these cases are no longer good law." (citation omitted)).

Accordingly, plaintiffs bear the burden of satisfying Rule 23, both on their renewed motion to certify a California class, and in opposing L'Oreal's motion to decertify the New York class. Because there is substantial overlap between the arguments raised by L'Oreal in opposing certification and in supporting decertification, the Court considers certification and decertification collectively, except as otherwise noted below. Moreover, because the Court previously found that plaintiffs had met their burden on Rule 23,[4] the Court takes L'Oreal's contentions argument-by-argument, rather than analyzing Rule 23 element-by-element.

With these threshold considerations in mind, the Court proceeds to the substance of plaintiffs' renewed motion to certify and L'Oreal's motion to decertify. The bulk of L'Oreal's briefs are dedicated to arguing that plaintiffs have not shown they have suffered an injury due to the lack of a flammability warning on the Serum. Out of this single basic contention, L'Oreal hatches eight separate arguments, all directed to different requirements under Rule 23(b)(3):

---

[4] In this regard, the Court observes that the Ninth Circuit declined to hear L'Oreal's 23(f) appeal of this Court's order certifying the New York class. Case No. 11-5465, Dkt. 117.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|----------|---|------|---------------|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

1. L'Oreal maintains that the class cannot be certified, because class members lack standing—a class member only has standing if they can show injury in fact, and no class member was injured by L'Oreal's failure to include a flammability warning on the Serum.  Opp. Cert. 15-17; Mot. Cert. 22-25.

2. L'Oreal contends the class is not ascertainable "because the evidence confirms that the class would consist of individuals who did not lose any money, and who were not injured by the conduct challenged in this case."  Opp. Cert. 18; Mot. Decert. 18-19.

3. L'Oreal argues that the class is not sufficiently numerous under Fed. R. Civ. P. 23(a)(1), because plaintiffs have not shown that any purchasers of the serum were injured, let alone enough purchasers to call for class treatment.  Opp. Cert. 18-19; Mot. Decert. 19-20.

4. L'Oreal argues that plaintiffs have not demonstrated commonality under Fed. R. Civ. P. 23(a)(2), because the evidence does not support plaintiffs' classwide theory that purchasers of the Serum paid a premium due to the absence of a flammability warning.  Opp. Cert. 19-20; Mot. Decert. 20-22.

5. L'Oreal asserts that the named plaintiffs are not typical under Fed. R. Civ. P. 23(a)(3) because the named plaintiffs were not injured by the absence of a flammability warning. Opp. Cert. 20-21; Mot. Decert. 22.

6. L'Oreal contends that the named plaintiffs will not adequately represent the California class as required by Fed. R. Civ. P. 23(a)(4) because they were not injured by L'Oreal's conduct.  Opp. Cert. 21.

7. L'Oreal argues that the New York class must be decertified, because GBL §§ 349 and 350 require that plaintiffs show they were injured, and plaintiffs have failed to produce evidence showing their injury.  Mot. Decert. 8-12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

8.   L'Oreal asserts that <u>Comcast</u> requires plaintiffs to adduce evidence of classwide injury, and here plaintiffs have failed to produce evidence showing that the New York class was injured at all.  Mot. Decert. 13-15.

All of these arguments turn on the same underlying premise: that plaintiffs were not injured by L'Oreal's conduct.  As explained above, whether plaintiffs were injured is the ultimate merits issue in this case.  "[T]he court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits."  <u>Messner v. Northshore Univ. HealthSystem</u>, 669 F.3d 802, 811 (7th Cir.2012), quoted approvingly by <u>Parsons v. Ryan</u>, 2014 WL 2523682 (9th Cir. June 5, 2014).  Moreover, for all of these arguments, L'Oreal fails to explain how the merits of plaintiffs' claims actually "overlap[s]" with the requirements of Rule 23.  <u>Dukes</u>, 131 S. Ct. at 2551.  L'Oreal cannot simply garb its merits arguments in the terminology of Rule 23—it must affirmatively show that a merits inquiry is unavoidably necessary to resolve whether the classes should be certified.  "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  <u>Amgen</u>, 133 S.Ct. at 1194-95.  Here, L'Oreal has not shown that such a searching merits inquiry is necessary, and the Court accordingly finds the eight above-referenced arguments unpersuasive.

In addition to the contentions described above, L'Oreal advances four other arguments about miscellaneous Rule 23 requirements, which the Court considers in turn.  First, L'Oreal claims that the classes are not ascertainable because it will be difficult to determine who purchased the Serum.  "As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists."  <u>Mazur v. eBay, Inc.</u>, 257 F.R.D. 563, 567 (N.D. Cal. 2009); <u>O'Connor v. Boeing N. Am., Inc.</u>, 184 F.R.D. 331, 319 (C.D. Cal. 1998) ("A class definition should be precise, objective, and presently ascertainable.").  L'Oreal asserts that, because the Serum is inexpensive, and no retailers kept records of who purchased the Serum during the class period, ascertaining the actual membership of the classes will be impossible.  Opp. Cert. 17.  L'Oreal presses much the same argument in contending that class treatment is not manageable under Fed. R. Civ. P. 23(b)(3)(D).  <u>Id.</u> at 25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

Contrary to L'Oreal's arguments, courts routinely certify class actions involving inexpensive products where there are unlikely to be records of who purchased the product. See Lanovaz v. Twinings N. Am., Inc., 2014 WL 1652338 (N.D. Cal. Apr. 24, 2014) (citing cases); Ries v. Arizona Beverages USA LLC, 287 F.R.D. 523, 535 (N.D. Cal. 2012) (explaining that if ascertainability required class members to retain receipts, "there would be no such thing as a consumer class action.").

Moreover, the cases cited by L'Oreal are either readily distinguishable or unpersuasive. In re POM Wonderful LLC, 2014 WL 1225184 at *6 (C.D. Cal. Mar. 25, 2014) stressed that "[c]lass actions, and consumer class actions in particular, each fall on a continuum of ascertainability dependent upon the facts of the particular case or product." Pom Wonderful fell "well toward the unascertainable end of the spectrum" because "towards the based on the volume of product sold, every adult in the United States is a potential class member." Id. Here, by contrast, L'Oreal sold approximately 9.9 million units of Serum throughout the nation, and the classes are limited to purchasers residing in New York and California. Similarly, Sethavanish v. ZonePerfect Nutrition Co., 2014 WL 580696, at *5 (N.D. Cal. Feb. 13, 2014), relies on the Third Circuit case Carrera v. Bayer Corp., 727 F.3d 300 (3d Cir. 2013). Carrera held that a class "was not ascertainable because there was insufficient evidence to show that retailer records could be used to identify class members." Id. at 308-09. But as McCrary v. Elations Co., LLC, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014), explains, "[w]hile [Carrera] may now be the law in the Third Circuit, it is not currently the law in the Ninth Circuit." Instead, "[i]n this Circuit, it is enough that the class definition describes 'a set of common characteristics sufficient to allow' a prospective plaintiff to 'identify himself or herself as having a right to recover based on the description.'" Id. (citing Moreno v. AutoZone, Inc., 251 F.R.D. 416, 421 (N.D. Cal. 2008)).

Second, L'Oreal argues that the conduct of plaintiffs' counsel since the prior motion for class certification demonstrates that they have not zealously litigated this case, and therefore shows that the named plaintiffs are not adequate under Fed. R. Civ. P. 23(a)(4). Opp. Cert. 21-22. L'Oreal states that, since the Court denied certification of the California class by order dated July 1, 2013, plaintiffs' counsel has delayed the litigation of this case. In particular, on the day plaintiffs' renewed motion was due,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|----------|------------------------------------------------------------------|------|---------------|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

plaintiffs' filed an ex parte application seeking to extend the deadline for filing the renewed motion for class certification.  Case No. 11-5465, Dkt. 118.[5]  L'Oreal contends that this procrastination shows that plaintiffs' counsel are not adequate.

The Court finds this contention unpersuasive.  Rule 23(a)(4) examines "the vigor with which the named representatives and their counsel will pursue the common claims." Hanlon v. Chrysler Corp., 150 F.3d at 1021.  A single ex parte application seeking to modify the case schedule does not call into doubt the "vigor" of plaintiffs' counsel.  Nor can L'Oreal complain of delay in this case, as L'Oreal itself sought to stay proceedings pending resolution of its Rule 23(f) appeal of this Court's order certifying the New York class.  Case No. 11-5465, Dkt. 110.

Third, L'Oreal asserts that the New York class should be decertified because the $50 dollar per sale statutory damages available under GBL § 349(h) grossly outweigh even the most generous calculation of plaintiffs' actual damages.  Mot. Decert. 15-17. Any recovery by the New York class would thus constitute an excessive fine under the Eighth Amendment; L'Oreal reasons that this in turn means that class treatment is not the superior method of adjudicating the controversy, as required by Fed. R. Civ. P. 23(b)(3). L'Oreal cites In re Zyprexa Products Liab. Litig., 671 F. Supp. 2d 397 (E.D.N.Y. 2009), a case in which the State of Mississippi brought misleading marketing claims against a pharmaceutical company, seeking statutory damages for each instance of false marketing. The Zyprexa court granted summary judgment on statutory damages, reasoning that "Mississippi's requests for statutory penalties on a per-violation basis, in addition to actual damages sought, would result in a multibillion dollar cumulative penalty grossly disproportionate to both the injury Mississippi has suffered and the seriousness of Lilly's alleged misconduct."  Id. at 463.  Similarly, L'Oreal contends that the disproportionality of statutory damages here requires decertification of the New York class.

---

[5] The Court granted this ex parte application by order dated November 5, 2013. Case No. 11-5465, Dkt. 118.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

This argument fails. The question of whether aggregating statutory damages against L'Oreal would violate the Eighth Amendment is a merits question, not properly answered on class certification. Indeed, <u>Zyprexa</u> decided the Eighth Amendment issue on summary judgment, not at class certification. But even if this Court were to accept L'Oreal's efforts to bootstrap an Eighth Amendment argument through the superiority element of Rule 23(b)(3), that argument would still fail. Disproportionate statutory damages preclude class treatment only if that disproportionality would thwart the underlying statutory scheme. <u>Bateman v. Am. Multi-Cinema, Inc.</u>, 623 F.3d 708, 716 (9th Cir. 2010). But any inquiry into the underlying statutory scheme of GBL § 349 is foreclosed here by <u>Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.</u>, 559 U.S. 393 (2010). As explained in the Court's previous order on class certification, <u>Shady Grove</u> held that federal law preempted a New York state statute limiting the aggregation of statutory damages in class actions. That holding binds the Court here: if an explicit statute is insufficient to preclude class treatment, then so too is any inquiry into the underlying statutory scheme. <u>See</u> <u>Shady Grove</u>, 559 U.S. at 436 (Ginsburg, J., dissenting) (criticizing the <u>Shady Grove</u> majority for "approv[ing] Shady Grove's attempt to transform a $500 case into a $5,000,000 award, although the State creating the right to recover has proscribed this alchemy"). The Court declines to contravene <u>Shady Grove</u> under the guise of a Rule 23(b)(3) superiority analysis.

Fourth, L'Oreal contends that plaintiff cannot establish that common issues predominate with respect to the California class, because the Court will need to determine on a purchaser-by-purchaser basis whether individual class members were concerned with flammability. This argument fails because, as explained in the Court's prior orders on class certification, "[u]nder the CLRA, plaintiffs may prove causation on a classwide basis by demonstrating the materiality of the omissions. Since materiality concerns objective features of allegedly deceptive advertising, not subjective questions of how it was perceived by each individual consumer, whether an omission is material presents a common question of fact suitable for class litigation." Dkt. 112 (citing <u>Massachusetts Mut. Life Ins. Co. v. Superior Court</u>, 97 Cal. App. 4th 1282, 1294 (2002)); see also <u>Mazza v. Am. Honda Motor Co., Inc.</u>, 666 F.3d 581, 595 (9th Cir. 2012) ("Under California's UCL, restitution is available to absent class members without individualized proof of deception, reliance, or injury.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

**V.     CONCLUSION**

In accordance with the foregoing, defendant's motion to exclude the testimony of Dr. Sanjog Misra is hereby DENIED.  Plaintiffs' renewed motion for class certification is GRANTED.  The following class is hereby certified:

California Class: All individuals who purchased Garnier Fructis Sleek & Shine Anti-Frizz Serum in the state of California at any time during the period of February 4, 2008 to the present.

Exclusions: Excluded from both classes are defendants as well as all employees of the Court, including, but not limited to, judges, magistrate judges, clerks, and court staff and personnel of the United States District Courts of the Central District of California, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court; their spouses or significant others and any minor children living in their households and any other persons within a third degree of relationship to any such federal judge; and finally, the entire jury venire called to for jury service in relation to this lawsuit.  Also excluded from the classes are any attorneys or other or other employees of any law firms hired, retained, and/or appointed by or on behalf of the named plaintiffs to represent the named plaintiffs and any/or proposed class members or proposed class in this lawsuit.  Also excluded from the classes are (1) any persons who have sustained physical injury or physical damage that relates to or arose from their use of Garnier Anti-Frizz Sleek & Shine Serum and (2) any persons who purchased Garnier Anti- Frizz Sleek & Shine Serum for resale or distribution.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:11-cv-01067-CAS(JCx); Consolidated with 2:11-cv-05465-CAS(JCx) | Date | July 24, 2014 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

For the reasons discussed in the Court's prior order, the Court appoints KamberLaw, LLP and Parisi & Havens LLP as class counsel pursuant to Rule 23(g).

Finally, defendant's motion to decertify the New York class is hereby DENIED.

IT IS SO ORDERED.

|  | 00 | : | 03 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |